**82 So.2d 759**

**Matter of the Succession of Lurl Pipes RYAN, Deceased.**

**Ruth Johnson, Intervenor.**
**No. 41692.**
Feb. 14, 1955.
On Rehearing June 30, 1955.
Rehearing Denied Oct. 4, 1955.

Dhu & Lea S. Thompson, Monroe, for Ruth Johnson, intervenor.

McBride & Goff, Ruston, for A. J. Bob Ryan, individually and as executor, appellee.

PONDER, Justice.

Mrs. Lurl Pipes Carter Ryan died on March 30, 1953, leaving no ascendants nor descendants. Thereafter on September 17, 1953, her husband, A. J. Bob Ryan, opened her succession and presented an olographic will, dated September 29, 1951, for probate. He was appointed executor in pursuance to the provisions of the will. Ruth Johnson, a niece of the decedent, opposed the will on the ground that it was null and void because it contained a prohibited substitution and asked that a prior will, dated April 17, 1946, be recognized as the last will of the testatrix and ordered probated. She also asked to be confirmed and qualified as testamentary executrix. Ryan interposed an exception of no right or cause of action to the opposition. The exception was sustained on the ground that the posterior will tacitly revoked the prior will. Ruth Johnson has appealed.

We gather from the record that, prior to the marriage of the deceased to Ryan, she made an olographic will on April 17, 1946, in which she bequeathed to her niece, Ruth Johnson, all of the property she died possessed of and wherein she designated Ruth Johnson as the executrix of her estate. Thereafter she married Ryan and on September 29, 1951, she executed an olographic will, which reads as follows:

"Ruston, Louisiana
September 29, 1951

"I, Lurl Pipes Ryan realizing the uncertainty of life do hereby make this last will and testament.

"I will and bequeath unto my husband, A. J. Bob Ryan, all the property that I die possessed of.

"I appoint my husband, A. J. Bob Ryan, executor of this my last will with full seizen and without bond.

"And at the death of my husband A. J. Bob Ryan, if she be living, I will and bequeath unto my niece Ruth Johnson all of the property I died possessed of and left to my husband A. J. Bob Ryan.

"This will entirely written, dated and signed by my own hand, this 29th day of September, 1951.

"Lurl Pipes Ryan"

The question presented is whether or not this posterior will operates as a tacit revocation of the prior will.

The posterior will unquestionably con-

tains a prohibited substitution. Under the provisions of Article 1520 of the LSA–Civil Code, substitutions are prohibited. It is stated there that: "Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee." In interpreting this article of the Civil Code, it was stated in Succession of Heft, 163 La. 467, 112 So. 301, 302, that "A bequest of property to one legatee with the stipulation and on the condition that at his death and without any act of conveyance from him it shall belong to another legatee named in the will is a prohibited substitution." This pronouncement of law has been approved by this Court on many occasions and especially in the recent cases of Maddox v. Butchee, 203 La. 299, 14 So.2d 4, 7 and Succession of Rougon, 223 La. 103, 65 So.2d 104.

Applying the test laid down in these cases, the bequest of all of the property of the testatrix to Ryan, with the provision that at his death it is bequeathed to Ruth Johnson, is a prohibited substitution and is therefore null and void.

It is contended that the posterior will operates as a tacit revocation of the prior will even if the posterior will is invalid for the reason that it contains dispositions incompatible and contrary to the provisions in the prior will. In support of this contention, Article 1693 and Article 1694 of the LSA–Civil Code are cited.

Under the provisions of Article 1691 of the LSA–Civil Code, a will may be expressly revoked by a formal declaration in writing or tacitly revoked by some other disposition of the testator or by an act supposing a change of will. Under this article of the Code, the revocation is general when all the dispositions are revoked and particularly when it falls on some of the dispositions only without touching the rest. A revoking will invalid in form does not render prior wills null. Succession of Feitel, 187 La. 596, 608, 175 So. 72, 80, and authorities cited therein. It is stated in Succession of Feitel, supra, that "The law on the subject, however, is that, if a will containing a clause revoking a previous will, or revoking all previous wills of the testator, is annulled, the revoking clause loses its effect, and the last preceding will stands unrevoked. Rev.Civ.Code, art. 1692; Hollingshead v. Sturgis, 21 La.Ann. 450; Succession of Hill, 47 La.Ann. 329, 16 So. 819." This same rule would apply when an invalid disposition is relied on as a tacit revocation of a disposition in a prior will. If the annulment of a will containing a revoking clause renders the revoking clause ineffective, certainly a prohibited substitution cannot be given the effect of tacitly or impliedly revoking a disposition contained in a prior will.

For the reasons assigned, the judgment of the lower court is reversed and set aside, the exception of no cause or right of action is overruled and the case is remanded

to be proceeded with according to law. The costs of this appeal to be paid by appellee, all other costs to await the final disposition of the cause.

HAMITER, J., dissents.

On Rehearing

HAMITER, Justice.

Under date of April 17, 1946, Mrs. Lurl Pipes Carter, then the widow of Richard M. Carter, made an olographic will in which she stated:

"I, Lurl Pipes Carter realizing the uncertainty of life, do hereby make this my last will and testament.

"I will and bequeath unto my niece, Ruth Johnson, all of the property that I die possessed of.

"I appoint my niece Ruth Johnson executrix of this my last will (with) full seizen and without bond." (Parenthesis ours.)

Later Mrs. Carter married A. J. Bob Ryan and, during their marriage, she executed another olographic will reading as follows:

"Ruston, Louisiana
September 29, 1951

"I, Lurl Pipes Ryan realizing the uncertainty of life do hereby make this last will and testament.

"I will and bequeath unto my husband A. J. Bob Ryan, all the property that I die possessed of.

"I appoint my husband A. J. Bob Ryan executor of this my last will with full seizen and without bond.

"And at the death of my husband A. J. Bob Ryan, if she be living I will and bequeath unto my niece Ruth Johnson all the property I died possessed of and left to my husband, A. J. Bob Ryan."

The testatrix died on March 30, 1953, and on September 17, 1953, A. J. Bob Ryan opened her succession and presented the last quoted testament for probate. In due course, and in accordance with Ryan's prayer, the court probated it, ordered registration and execution thereof, and confirmed Ryan as testamentary executor.

Several days thereafter Ruth Johnson, referred to by decedent in both wills as her niece, instituted this suit in the succession proceedings against Ryan, individually and as executor, seeking a judgment declaring null and void the will of September 29, 1951 (as well as all proceedings relating to its probate and execution), recognizing the instrument dated April 17, 1946, as decedent's last will and testament, and ordering the first will probated and executed according to law. Plaintiff charged " * * * that the purported last will and testament which was filed for probation, probated and ordered executed on September 17, 1953 was and is null and void for the reason that it contains a substitution and fidei commissa contrary to the provisions of the Civil Code and law, and cannot be legally enforced." Additionally, plaintiff alleged " * *· *

that there are various collateral heirs of Lurl Pipes Ryan, formerly Lurl Pipes Carter, but that she left no ascendants or descendants and that the collateral heirs are without interest in this contest." (These allegations, along with a failure to allege that she is an heir at law of decedent, show that plaintiff is suing exclusively as a legatee under the anterior testament.)

Ryan excepted to the petition, asserting that it states neither a right nor a cause of action. Under the exceptions he urged that plaintiff is without interest, and hence has no right, to question the validity of the probated will, because even if the bequeathing clauses thereof contain a prohibited substitution and cannot be given effect (which defendant denies) they, nevertheless, accomplish a tacit revocation of the anterior testament which is the sole basis for plaintiff's claim to decedent's estate.

The trial judge sustained the exception of no right of action and dismissed the suit. In announcing his conclusion he observed "* * * that the purported will relied upon by plaintiff was revoked by the will executed subsequent thereto on September 29, 1951. The revocation is such a revocation that even in so many words showed that the testator had changed her will and intention and amounted to a tacit revocation of the former will."

From the judgment plaintiff is appealing.

The revocation of testaments by the act of the testator is either express or tacit. It

is tacit when it results *from some other disposition of the testator,* or *from some act which supposes a change of will.* LSA-C.C. Article 1691. "The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities." LSA–C.C. Article 1692. "Posterior testaments, which do not, in an express manner, revoke the prior ones, annul in the latter only such of the dispositions therein contained as are incompatible with the new ones, or contrary to them, or entirely different." LSA–C.C. Article 1693.

Admittedly, this decedent's posterior will is regular as to its form, and it contains no express revocation clause. Hence, the only issue created by the exception of no right of action, which the trial judge sustained, is whether as a result of the provisions of such will the decedent tacitly revoked her earlier testament. And that issue poses these questions: 1. Are the terms and bequests of the two wills so incompatible or conflicting as to justify the inference that the testatrix intended a revocation of the anterior testament? 2. If a conflict of that nature exists, and assuming for the sake of argument that the bequests of the posterior will contain a prohibited substitution and are null as plaintiff contends, is the prior testament tacitly revoked by the later ineffectual bequeathing clauses?

The provisons of the two wills, in our opinion, are palpably incompatible and conflicting. In the first place each instru-

ment is referred to by the testatrix as her *last* will and testament. Secondly, a change in the appointment of a testamentary executor is noticed, the originally designated niece having been replaced by the husband. And, finally, the bequeathing clauses are entirely different. Thus, initially, she left to her niece "all of the property that I die possessed of"; whereas, later she bequeathed the same property to her husband.

True, in a separate paragraph of the final will she attempted to control her estate after death, declaring that if her niece be living when the husband died she (the niece) was then to receive it. This provision might nullify the bequests, including that to the husband (whether it does we need not and, hence, do not decide herein). However, it fails to eliminate the inconsistency pointed out above—a conflict which becomes more obvious when it is realized that to recognize each legatee as the owner of decedent's estate on her death, and as such entitled to all of the fruits thereof, would be an impossibility.

But would a prohibited substitution in the posterior testament (assuming arguendo that one exists), rendering the bequests therein null and void and unenforceable, prevent the resulting of a tacit revocation of the conflicting disposition made in the first will? This is the second question to be determined herein, and its correct answer seems to depend on an interpretation of LSA–C.C. Article 1694. The provisions thereof read: "A revocation made in a posterior testament has its entire effect, even though this new act remains without execution, either through the incapacity of the person instituted, or of the legatee, or through his refusal to accept it, provided it is regular as to its form."

In keeping with the proviso contained in that article, and primarily by reason of LSA–C.C. Article 1692 (above quoted), this court has held that a revoking clause of a will irregular as to form, and hence a nullity, is without effect. See Succession of Feitel, 187 La. 596, 175 So. 72. But here we are not concerned with a revocation invalid for want of proper form. The later bequests of the testatrix, which disclose a change of will, are regular as to form; they are unenforceable only because they contain a prohibited substitution (assumedly). This being true, according to the provisions of Article 1694, they have resulted in a tacit revocation of the previous disposition to the niece, unless it be held that the examples contained therein are exclusive or limiting, rather than illustrative.

These codal provisions had their origin in Article 1037 of the Code Napoleon which provided: "A revocation made in a posterior testament has its entire effect, even though this new act remains without execution through the incapacity of the instituted heir or of the legatee, or through his refusal to accept it." Our Civil Code of 1808, in Article 186, contained substantially the same language.

With reference to such article of the Napoleonic Code, Dalloz, in his annotations (Codes Annotes, Nouveau Code Civil, Volume II, page 761, Note 1) stated: "The provisions of Article 1037 are not to be considered as limiting. They are to be applied to cases of inexecution of a testament other than the incapacity or the refusal of the legatee."

And in Notes 14 and 15, particularly with respect to prohibited substitutions, he said:

"Likewise, the tacit revocation of legacies contained in a testament stands, as a general rule, even though the new testamentary dispositions giving rise to it are stricken with nullity as including a prohibited substitution.

"It has thus been adjudged that a testament which is null as containing a prohibited substitution nevertheless effects revocation of a prior testament whose dispositions are incompatible with the dispositions of the nullified testament, so long as the last testament has been drawn up according to the formalities required for its validity."

And Dalloz noted that the views entertained by Poitier, Duvergier, Demolombe, and by Aubrey and Rau were similar to his; while those of Merlin, and of Baudry-Lacantinerie and Colin were different.

Likewise, there was a conflict among the French writers as to whether a tacit revocation was effected when the later bequest was irregular as to form. This is pointed out in an opinion of this court in Fuselier v. Masse, 1832, 4 La. 423.

Upon the revision of the Louisiana Civil Code in 1825 presumably the framers thereof, who were men learned in the law and familiar with the interpretations that had been placed on various provisions of the Napoleonic Code, were well aware of the conflict among the French authorities as to the construction of Code Napoleon Article 1037, the provisions of which were carried into our Civil Code. Accordingly, it is important to note that in the 1825 Code (Article 1687) the redactors added the proviso reciting that a revocation to be effective must be regular as to form, but they did not in any manner amend the article so as to require that it be valid as to substance. From this it can be deduced that the intention was not to require that the later conflicting bequest be valid in substance in order to have its effect as a revocation. If it had been, the proviso, seemingly, would have read: "Provided it is regular as to its substance and form."

Interesting also is that in the Projet of the Code of 1825 (French version) there were numerous articles proposing amendments to the provisions under consideration relative to the effect of a null disposition; but all of them dealt only with defects of form, and evidently were ultimately grouped and placed as one in the amending proviso. In view of the conflicting views of the French authors, pointed out above, it appears certain that had the redactors

deemed it proper to also provide that substantive defects should prevent the revocation from having its full effect such defects would have been included and listed in such proposals.

■ That it was not the intent of the drafters of the Louisiana Civil Code to require that acts be substantively valid in order to effect a revocation, and also that they did not intend the examples contained in Article 1694 of our present Code to be exclusive or limiting, are further indicated by Article 1695 which provides: "A donation *inter vivos,* or a sale made by the testator of the whole or a part of the thing bequeathed as a legacy, amounts to a revocation of the testamentary disposition, for all that has been sold or given, even though the sale or donation be null, and the thing have returned into the possession of the testator, whether by the effects of that nullity, or by any other means."

■ For these reasons we conclude that the bequeathing of decedent's property to her husband tacitly revoked the former disposition to her niece, even if the later bequest contains a prohibited substitution and is unenforceable. And it follows that the niece can take nothing under the first will on which her claim to decedent's estate is solely predicated. Accordingly, she is without interest and has no right to have the posterior testament nullified.

For the reasons assigned the judgment sustaining the exception of no right of action and dismissing plaintiff's suit is affirmed at her costs. The right to apply for a rehearing is reserved to plaintiff.

PONDER, J., dissents.