86 So.2d 687

**SUCCESSION of Mrs. Julia Bonnabel ROLLING.**

**No. 42250.**

March 26, 1956.

Sidney G. Roos, New Orleans, for appellants.

McDonald & Buchler, Metairie, Patrick E. Carr, Frank V. Zaccaria, New Orleans, for appellees.

HAMITER, Justice.

Mrs. Julia Bonnabel Rolling, widow of Charles W. Rolling, died at her domicile in Metairie, Jefferson Parish, on September 13, 1946. Surviving were a daughter, Miss Bonnie W. Rolling, and four sons, Erle W., Laurance, Alfred and Julian Emanuel Rolling.

Shortly after her death an olographic last will and testament made by the decedent on May 4, 1946 was located, following a search by a commissioned Notary Public, in her safety deposit box in the Whitney National Bank of New Orleans. On the petition of all of the children the court probated it and ordered the taking of an inventory of decedent's estate.

Some months later, while the inventory was being made, Miss Bonnie W. Rolling unexpectedly discovered among the effects of the decedent in the premises where she resided another olographic will and an attached codicil, these having been dated June 14, 1941 and July 29, 1941, respectively. They, on the petition of the daughter, were also probated.

On October 28, 1949 Miss Bonnie W. Rolling, individually and as testamentary executrix, petitioned the district court, pursuant to the Uniform Declaratory Judgments Act, LSA–R.S. 13:4231 et seq., to have it "interpret and determine the true and correct legal intent and effect of the provisions and dispositions contained in said documents" (the probated two wills and codicil). The court dismissed the petition on exceptions of no right and no cause of action and a plea of prematurity filed by decedent's sons.

On an appeal this court reversed and set aside that decision, overruled the exceptions and plea, and remanded the cause to be proceeded with according to law. See 224 La. 23, 68 So.2d 744.

On the remand the district court tried the declaratory judgment cause on its merits. Subsequently, it ruled: "The Court believes, and so holds, that the testatrix, by the will dated May 4th, 1946, did not intend to revoke the will dated June 14th, 1941 and the codicil dated July 29th, 1941, and further, that the testatrix intended to and did make the following dispositions, to-wit:" (Here recognition is given to seven dispositions from the two wills which, considered in their entirety, appear to afford to the daughter a decided advantage over her brothers.) From the judgment the four sons are presently appealing.

In the will of June 14, 1941 the decedent first described herself as "Mrs. Charles Rolling, nee Julia Bonnabel, of the Parish of Jefferson, State of Louisiana", and she then made the following bequests: 1. To her husband the usufruct of $10,000 in bonds (no specific ones named) and to her four sons equally the naked ownership thereof. 2. To her daughter certain particularly described real estate (apparently her home) in Brockenbrough Court, Metairie Ridge, Jefferson Parish, and "personal

effects and belongings including furniture, jewelry, household effects and all other effects" in her home, all of these having been bequeathed as an extra portion and not subject to collation. 3. To her daughter one-half of the double tomb in Metairie Cemetery and to the sons the other half. 4. To the sons, to be shared and shared alike, her real estate located in Metairieville, Jefferson Parish. 5. To her daughter "$10,000 in bonds; the remainder of my stock and bonds to be equally divided between my four sons." In conclusion, the testatrix named her daughter and John Rau as executors of her estate.

In the codicil of July 29, 1941 she merely gave instructions concerning payment of the usufruct bequeathed to her husband and designated her daughter trustee for the share left to one of the sons (evidently a minor then).

Following the death of her husband Mrs. Rolling made the second will involved herein, of date May 4, 1946, which (with the numerous mispelled words corrected) recited:

"State of Louisiana
Parish of Jefferson

                         May 4-1946
"I, Mrs. Chas. W. Rolling, nee Julia Bonnabel of the Parish of Jefferson, State of Louisiana do make and constitute this my last will and testament. I will and bequeath to my daughter Bonnie W. Rolling all my personal effects and belongings including furniture jewelry household effects and all other effects in our home.

"I will and bequeath to my daughter Bonnie W. Rolling one half of my double tomb in Metairie Cemetery, the half in which her father is buried the other half I leave to my four sons Alfred, Erle, Laurance and Julian Emanuel, I will and bequeath to my daughter Bonnie W. Rolling my stock in Swift and Company and my stock in Atlas Corporation, I will and bequeath to my four sons Alfred, Erle, Laurance and Julian Emanuel

"The remainder of my estate consisting of stock, Bonds and real estate, to share and share alike. I hereby appoint my daughter Bonnie W. Rolling and Rev. Felix Miller as executors of my estate, or either of them, should any one of them be unable or unwilling to act, the said executors or either of them to have full seizen of my estate and to serve without bond.

                    "Mrs. Chas. W. Rolling
                    nee Julia Bonnabel"

It is the contention of appellants (the four sons) that the document of May 4, 1946 constituted decedent's last will and testament, and that by it she tacitly revoked the prior will (together with the attached codicil) in its entirety.

On the other hand appellee, the daughter, urges (as the trial court held) that the posterior document effected only a particular

revocation of specific dispositions of the prior one; and that the provisions of both wills, except where conflicting, must be carried out. In their brief her counsel state: "* * * In her will of 1946, she repeated two particular legacies given to her daughter in her 1941 will and disposed of the $10,000.00 in bonds previously left to her husband, and gave the jewelry, household effects, and so forth, to her daughter, but not as an extra portion as she did in the 1941 will, thereby making a change of this particular legacy."

"The revocation of testaments by the act of the testator is express or tacit, general or particular.

\* \* \* \* \* \*

"It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.

\* \* \* \* \* \*

"It is particular when it falls on some of the dispositions only, without touching the rest." LSA–Civil Code Article 1691.

"Posterior testaments, which do not, in an express manner, revoke the prior ones, annul in the latter only such of the dispositions therein contained as are incompatible with the new ones, or contrary to them, or entirely different." LSA–Civil Code Article 1693.

"When a person had ordered two things, which are contradictory, that which is last written is presumed to be the will of the testator, in which he has persevered, and a derogation to what has before been written to the contrary." LSA–Civil Code Article 1723.

"A subsequent will, showing by its whole tenor that it was intended to contain all the testamentary dispositions of the deceased, revokes a prior will, in so far as it contains dispositions incompatible with those contained in the will last made." Succession of Bobb, 42 La.Ann. 40, 7 So. 60. See also Succession of Pizzati, 141 La. 645, 75 So. 498 and Succession of Ryan, 228 La. 447, 82 So.2d 759 (on rehearing).

Viewing the documents presently under consideration in the light of the above announced principles we find that the one dated May 4, 1946 disposed of the entire estate of decedent and contained dispositions which for the most part were incompatible with those previously made; and we therefore conclude that it was intended as her last and only will and testament.

Thus, in the posterior instrument the testatrix bequeathed to the daughter her personal effects without reciting that they were to be an extra portion as she had stated in the former one. Again, the testatrix initially made particular bequests of all of the real estate that she owned (two separate parcels, as revealed by the inventory) and of certain bonds, and she directed that the remainder of her stock and bonds were to be equally divided among her four sons; whereas, subsequently, she made no particu-

lar bequests of her mentioned real estate and bonds but, on the contrary, included them in a residual clause reciting that "The remainder of my estate consisting of stock, bonds, and real estate, to share and share alike." Also, incompatibility is noticed between the provisions of the two instruments respecting the appointment of executors, John Rau formerly having been named along with Miss Bonnie W. Rolling, and Reverend Felix Miller later having been selected to so serve.

Moreover, had the testatrix not intended the document of May 4, 1946 to be her last and only will it seems that she would have omitted therefrom the description of herself and the bequest respecting the tomb in Metairie Cemetery, both of which were substantially identical with those contained in the first document. Particularly appropriate in this connection is the following observation contained in Succession of Pizzati, supra [141 La. 645, 75 So. 504]: " * * each of the wills carries a complete disposition of the entire estate, and contains recitals which would have been entirely superfluous in a will intended to be merely additional, supplementary to, or designed to be read in connection with, another, and not to stand independently by itself as the sole and only will. We refer to the clause wherein the testator gives information about himself."

Additionally, we are impressed by the fact that this testatrix had amended her first will by a codicil. She, therefore, was apparently aware of that method of changing particular portions of a testament without affecting the remainder of the bequests. However, in 1946, rather than "amending" by a codicil as she had formerly done, the testatrix made a new will declaring that "I * * * do make and constitute this my last will and testament." Having said this she then proceeded to dispose of her whole estate, through bequests entirely different from those previously made, thereby indicating that she intended to and did tacitly revoke the prior testament.

■ This brings us to the task of interpreting the 1946 instrument, in the performance of which we must principally endeavor to ascertain the intention of the testatrix. LSA–Civil Code Article 1712; Succession of Pizzati, supra; Succession of Homan, 202 La. 591, 12 So.2d 649; Succession of Price, 202 La. 842, 13 So.2d 240; Succession of Earhart, 220 La. 817, 57 So.2d 695; Succession of Rougon, 223 La. 103, 65 So.2d 104.

After considering the will in its entirety, giving effect to every word therein contained, we are convinced that the testatrix thereby attemped to and did make an almost even distribution of her estate among her five children, she preferring only slightly the daughter who was named executrix and to whom she bequeathed her personal effects (but not without their value having to be collated):

Particular bequests in the 1946 testament (in addition to the one respecting personal effects) were: to the daughter one-half of the Metairie Cemetery double tomb and the stock in Swift and Company (valued in the inventory at $3,300); and to the four sons the other one-half of the tomb and the stock in Atlas Corporation (valued at $4,-875). Under the residuary clause of the will the testatrix left the remainder of her estate, consisting of stocks, bonds and real estate, to be shared and shared alike, she obviously intending that such residue was to be equally divided among the five children whom she had previously and specifically named.

Of course, we are aware that the testatrix placed no period or other punctuation mark between the bequest of the Atlas Corporation stock to her four sons and the residual bequest. However, as is evident from an inspection of the will itself, she clearly intended that those two bequests should be separate from and independent of each other. The first word of the residual bequest is indented and commences with a capital "T". An examination of the remainder of the testament, and also of the former will and codicil, shows that the capital "T" was used elsewhere only when the testatrix began a new sentence. And con-

sistently throughout the wills and codicil she employed a typically lower case "t" when it was the first letter of a word within, and which did not commence, a sentence.

For the reasons assigned the judgment appealed from is reversed and set aside and it is now ordered, adjudged and decreed that the instrument of May 4, 1946 is the last and only will of decedent, Mrs. Julia Bonnabel Rolling, it having tacitly revoked her prior testament and codicil. It is further decreed that therein the testatrix intended to and did make the following dispositions.

1. To her daughter, Miss Bonnie W. Rolling, all of her personal effects and belongings, including those in her home; one-half of her double tomb in Metairie Cemetery; and her stock in Swift and Company.

2. To her four sons, Alfred, Erle, Laurance and Julian Emanuel Rolling, the other one-half of her double tomb and her stock in Atlas Corporation.

3. To her above named daughter and four sons, to be shared and shared alike, the remainder of her estate.

All costs of this declaratory judgment proceeding are to be paid from funds of decedent's estate.