HUGHES, J.
The issue in this case is whether a revocation clause, contained within a notarial testament that was found to be void for failure to include an attestation clause, could be valid as an authentic act and thereby revoke two prior testaments, resulting in an intestate succession. The district court found no valid revocation. The appellate court ruled that the invalid testament nevertheless met the requirements of La. C.C. art. 1833 so as to qualify as an authentic act, capable of revoking prior testaments pursuant to La. C.C. art. 1607(2). For the following reasons we reverse the appellate court, reinstate the district court rulings, and remand to the district court for further proceedings.
FACTS AND PROCEDURAL HISTORY
The decedent, Charles G. Harlan, died on November 26, 2015, survived by his second wife, Xiaoping W. Harlan, and his four adult children from his first marriage, Veni S. Harlan, Hansel M. Harlan, Jeffrey D. Harlan, and Gretel G. Harlan Kelly.
On December 10, 2015 the Harlan children filed a petition in the district court, seeking to have the decedent's March 9, 2000 testament filed and executed and to have Hansel Harlan named as executor of the succession. The petitioners also asserted their agreement to an independent administration of the succession in accordance with La. C.C.P. art. 3396 et seq. On the same day, the district court granted the relief sought, ordering that, pursuant to La. C.C.P. art. 2891, the 2000 notarial testament be filed and executed, *222 and directing that the order be given the effect of probate. In addition, an independent administration of the succession was ordered, Hansel Harlan was appointed as the independent executor of the succession, and he was invested with the rights, powers, authorities, privileges, and duties appropriate to that appointment.
On January 15, 2016 Xiaoping filed a petition to nullify the probated March 9, 2000 testament, to have Hansel removed as executor, and to have herself appointed as administratrix of the succession. Xiaoping further sought to file a purported notarial testament, executed on June 5, 2012 and containing a revocation of all prior testaments, along with a March 1, 2014 codicil.
Hansel filed an opposition to Xiaoping's petition, a rule to show cause why succession documents, assets, and property should not be turned over, and a rule to show cause why Xiaoping should not be denied a widow's portion.
Following a February 11, 2016 hearing on Xiaoping's petition and Hansel's opposition and rules to show cause, District Court Judge Edward J. Gaidry, Pro Tempore, ruled in Hansel's favor: declaring the 2012 testament and 2014 codicil null ab initio; denying Xiaoping's challenge to the probated 2000 testament; denying Xiaoping's request to be appointed administratrix; reconfirming Hansel as executor; ordering Xiaoping to vacate residential property owned by the succession within thirty days; requiring Xiaoping to turn over all property belonging to the estate to the executor; and denying a marital portion to Xiaoping. Judgment was signed on February 24, 2016.
Meanwhile, on February 23, 2016, Xiaoping filed a petition seeking probate of an olographic testament allegedly executed by the decedent on May 24, 2007, which she had recently discovered among the decedent's effects. A hearing on the validity of the 2007 testament was scheduled for April 7, 2016.
Hansel and his siblings opposed the petition, arguing that, although the purported 2012 notarial testament was invalid for failure to have the statutorily required attestation clause, the document was nevertheless an authentic act that served to revoke all prior testaments, including the 2007 olographic testament; thus, the succession was intestate.[1]
On March 31, 2016 the parties filed a joint motion to limit the April 7, 2016 hearing to issues related to the validity of the 2007 olographic testament. At the conclusion of the April 7, 2016 hearing, newly-elected District Court Judge Elizabeth A. Engolio ruled: that the 2007 olographic testament was entirely written, dated, and signed in the decedent's handwriting and met the legal requirements to be admitted to probate and executed; and that the revocation language contained in the invalid 2012 testament could not be applied to revoke the 2007 testament. Judgment was signed on June 6, 2016.
On April 27, 2016 Hansel and his siblings filed a motion for devolutive appeal from the February 24, 2016 judgment, and on June 10, 2016 they filed an appeal of the June 6, 2016 judgment.
*223 The two appeals were heard concurrently in the appellate court. Concluding that the 2012 testament, though invalid, was nonetheless an authentic act, which revoked the 2000 testament, the appellate court reversed that part of the February 24, 2016 district court judgment that had rejected the challenge to the probate of the March 9, 2000 testament. See Succession of Harlan , 16-1345, 2017 WL 2445186 (La. App. 1 Cir. 6/6/17) (unpublished). The appellate court further reversed that part of the June 6, 2016 district court judgment that found that the invalid 2012 testament was not effective as an authentic act that could revoke the May 24, 2007 olographic testament, and the appellate court rendered judgment holding that the May 24, 2007 olographic testament was revoked; the matter was remanded to the district court for further proceedings. See Succession of Harlan , 16-1346, 2017 WL 2445187 (La. App. 1 Cir. 6/6/17) (unpublished).
Xiaoping filed a writ application seeking review of the appellate court decisions, which we granted. See Succession of Harlan , 17-1132 (La. 12/5/17), 231 So.3d 624.
LAW AND ANALYSIS
Xiaoping contends herein that the appellate court erred in ruling that a revocation clause in an absolutely null notarial testament can revoke prior testaments and in ruling that the decedent's invalid 2012 testament was nevertheless in authentic form such that the revocation clause was effective and revoked all of the decedent's prior testaments.
As applicable to the issues before this court, the salient facts are not in dispute. The decedent herein executed three wills: the first on March 9, 2000, the second on May 24, 2007; and the third on June 5, 2012. The 2000 will was a statutory testament under former La. R.S. 9:2442, the 2007 will was an olographic testament pursuant to La. C.C. art. 1575 ; and the 2012 will was a putative notarial testament under La. C.C. art. 1576 et seq. As a prefatory remark in each will, the decedent stated that he revoked any and all prior wills. The parties agreed that the 2012 will was invalid as a testament, since it did not have the attestation clause required by La. C.C. art. 1577.[2]
Thus, the only issues before this court involve the proper application of succession law to the undisputed facts. Questions of law are reviewed under a de novo standard of review. This court is the ultimate arbiter of the meaning of the laws of this state.
*224 Soileau v. Smith True Value & Rental , 12-1711, p. 7 (La. 6/28/13), 144 So.3d 771, 777 ; Red Stick Studio Development, L.L.C. v. State ex rel. Department of Economic Development , 10-0193, p. 9 (La. 1/19/11), 56 So.3d 181, 187.
The starting point in the interpretation of any law is the language of the law itself. M.J. Farms, Ltd. v. Exxon Mobil Corporation , 07-2371, p. 13 (La. 7/1/08), 998 So.2d 16, 27. See also Kelly v. State Farm Fire & Casualty Company , 14-1921, p. 10 (La. 5/5/15), 169 So.3d 328, 335 ("[W]e begin as we must with the words of the statute itself.").
The text of a law is the best evidence of legislative intent. La. R.S. 24:177(B)(1). When the meaning of a law cannot be ascertained by the application of the provisions of Chapter 2 of the Preliminary Title of the Louisiana Civil Code ( La. C.C. arts. 9 - 13 ) and Chapter 1 of Title 1 of the Louisiana Revised Statutes of 1950 ( La. R.S. 1:1 - 1:17 ), the court shall consider the intent of the legislature. La. R.S. 24:177(A).
As stated in La. C.C. art. 9, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. See also La. R.S. 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."). When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13.
Pertinent to the resolution of the issues in this case is La. C.C. art. 1573, which provides: "The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null." There is no dispute in this case that the 2012 testament of the decedent failed to include the attestation clause required by La. C.C. 1577 ; therefore, La. C.C. art. 1573 is applicable. As this court recognized in Successions of Toney , 16-1534, p. 5 (La. 5/3/17), 226 So.3d 397, 401, Civil Code Article 1573"provides in no uncertain terms that '[t]he formalities prescribed for the execution of a testament must be observed or the testament is absolutely null .' " (Emphasis original.)
Notwithstanding, the appellate court in this case determined that the 2012 putative testament, though invalid as a testament, constituted an authentic act pursuant to La. C.C. art. 1833,[3] and the revocation clause contained therein was sufficient to revoke all prior testaments of the decedent, pursuant to La. C.C. art. 1607. Article 1607 provides:
Revocation of an entire testament occurs when the testator does any of the following:
(1) Physically destroys the testament, or has it destroyed at his direction.
(2) So declares in one of the forms prescribed for testaments or in an authentic act.
*225 (3) Identifies and clearly revokes the testament by a writing that is entirely written and signed by the testator in his own handwriting.
(Emphasis added.)
Prior jurisprudence of this court has held that a revoking will, invalid in form, does not revoke prior wills. See Succession of Ryan , 228 La. 447, 452, 82 So.2d 759, 761 (1955) ; Succession of Feitel , 187 La. 596, 618, 175 So. 72, 80 (1937), overruled on other grounds by Succession of Jenkins , 481 So.2d 607 (La. 1986) ; Succession of Hill , 47 La. Ann. 329, 332, 16 So. 819, 820-21 (1895) ; Hollingshead v. Sturgis , 21 La. Ann. 450, 451-52, 1869 WL 4652, pp. 1-2 (1869). It was further held that if a will, containing a clause revoking a previous will or revoking all previous wills of the testator, were annulled, the revoking clause loses its effect and the last preceding will stands unrevoked. Id.
However, under consideration in the cited cases was a precursor to current Civil Code Article 1607, former Article 1692, which provided for express revocation as follows: "The act by which a testamentary disposition is revoked, must be made in one of the forms prescribed for testaments, and clothed with the same formalities." Former Article 1692 was replaced with current Article 1607 by 1997 La. Acts, No. 1421 (effective July 1, 1999). In addition to allowing express revocation by a subsequent testament, Paragraph (2) of Article 1607"expands the ability to revoke by adding the use of an authentic act to do so." La. C.C. art. 1607, 1997 Revision Comments.
Despite the addition by Act 1421 of the authorization to use an authentic act to revoke a testament in Article 1607(2), the phrasing of that provision is significant. Article 1607(2) provides that revocation of a testament occurs when the testator "[s]o declares in one of the forms prescribed for testaments or in an authentic act." (Emphasis added.)
Unless it is otherwise clearly indicated by the context, whenever the term "or" is used by the Legislature, it is used in the disjunctive and does not mean "and/or." Whitley v. State ex rel. Board of Supervisors of Louisiana State University Agricultural Mechanical College , 11-0040, p. 11 (La. 7/1/11), 66 So.3d 470, 475. See also La. R.S. 1:9 ; Kelly v. State Farm Fire & Casualty Company , 14-1921, pp. 24-25 (La. 5/5/15), 169 So.3d 328, 343-44. The disjunctive "or" generally sets apart two mutually exclusive alternatives. See Blackburn v. National Union Fire Insurance Co. of Pittsburgh , 00-2668, p. 8 (La. 4/3/01), 784 So.2d 637, 642 ; Kelly v. Weil , 563 So.2d 221, 224 n.5 (La. 1990).
When the "or" in Article 1607(2) is given its disjunctive meaning, the provision is read as authorizing a testamentary revocation in either "one of the forms prescribed for testaments" or "in an authentic act." See Kathryn Venturatos Lorio, 10 La. Civ. L. Treatise , Successions and Donations, § 14:3, "Revocation of Entire Testament" (2d ed.) ("A testament may also be revoked by a formal declaration, either in a form prescribed for testaments or in an authentic act.") (emphasis added). Such a disjunctive reading would continue in effect the past jurisprudential rule (as stated in Succession of Ryan , Succession of Feitel , Succession of Hill , and Hollingshead v. Sturgis , supra ) that a revoking will, invalid in form, does not revoke prior wills, as the revoking clause becomes ineffective, and the preceding will stands unrevoked.
When Article 1607 is viewed in light of Article 1573 ("The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null."), as required by *226 La. C.C. art. 13 ("Laws on the same subject matter must be interpreted in reference to each other."),[4] it becomes clear that a disjunctive reading of "or" in Paragraph (2) of Article 1607 is appropriate. An "absolutely null" will "is deemed never to have existed," and the parties "must be restored to the situation that existed before the [will] was made."[5] La. C.C. 2033.[6]
It should further be noted that the express provisions of Article 1573 ("The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null.") admit no exceptions. Compare La. C.C. art. 96 ("An absolutely null marriage nevertheless produces civil effects in favor of a party who contracted it in good faith for as long as that party remains in good faith ...."); La. C.C. art. 1503 ("A donation, inter vivos or mortis causa, that impinges upon the legitime of a forced heir is not null but is merely reducible to the extent necessary to eliminate the impingement."); La. C.C. art. 1541 ("A donation inter vivos shall be made by authentic act under the penalty of absolute nullity, unless otherwise expressly permitted by law."); La. C.C. art. 1834 ("An act that fails to be authentic because of the lack of competence or capacity of the notary public, or because of a defect of form, may still be valid as an act under private signature."); La. C.C. art. 1845 ("A donation inter vivos that is null for lack of proper form may be confirmed by the donor but the confirmation must be made in the form required for a donation. The universal successor of the donor may, after his death, expressly or tacitly confirm such a donation."). Unlike Articles 96, 1503, 1541, 1834, and 1845, which provide for some method of continued viability of *227 the described acts despite a defect in the circumstances described therein, Article 1573 provides only for the absolute nullity of a donation mortis causa, when there has been no substantial compliance[7] with the formalities prescribed therefor.
Thus, we can conclude that, if the Legislature had intended to create an exception to the absolute nullity provided for in Article 1573, by authorizing the authentic act form of a revocation to be derived from an absolutely null testament (when the requirements for an authentic act have otherwise been met within the purported testament), then express language (comparable to the language appearing in La. C.C. arts. 1541 or 1834, supra) to that effect could have been enacted within Article 1573 and/or 1607. No such qualification exists within either Article 1573 or 1607.[8] Therefore, we must conclude that a juridical act, formulated as a last will and testament, which does not substantially comply with the formalities set forth in La. C.C. arts. 1574 - 1580.1, prescribing the requisite formalities for olographic and notarial testaments, is absolutely null and void ab initio, and can have no effect of any sort. Civil Code Article 1607 must be read in light of Article 1573 and cannot be read to give any effect to an absolutely null testament.[9] Our holding on this point renders erroneous the holding of the appellate court, i.e., that a revocation clause in an absolutely null testament, which otherwise meets the requirements for an authentic act, can constitute a valid and effective revocation of prior wills.[10]
Accordingly, we conclude that the appellate court erred in reversing those parts of the February 24, 2016 and the June 6, 2016 district court judgments, which found that the invalid 2012 testament did not contain a valid authentic act that revoked the March 9, 2000 and the May 24, 2007 *228 testaments, and the appellate court erred in rendering judgments holding that the March 9, 2000 and the May 24, 2007 testaments were revoked by the absolutely null 2012 testament.
DECREE
For the reasons stated herein, we reverse the appellate court decisions, as stated hereinabove, and we reinstate the February 24, 2016 and the June 6, 2016 district court judgments. The matter is remanded to the district court for further proceedings.
REVERSED; REMANDED .
GENOVESE, JUSTICE, dissents.
I dissent and would affirm the appellate court's decision. In this case, the decedent, Charles George Harlan ("Mr. Harlan"), executed a document titled "Last Will and Testament of Charles Harlan Sr." on June 5, 2012 ("2012 document"). Within the 2012 document, Mr. Harlan included a provision revoking his prior testaments. The parties do not dispute that the 2012 document was invalid as a notarial testament. I agree with the appellate court that the 2012 document remains a valid authentic act under the plain language of the applicable Louisiana Civil Code articles and, thus, effectively revoked Mr. Harlan's prior testaments. In my view, the law does not afford discretion for this Court to find otherwise.
Under Louisiana law, prior testaments can be revoked by authentic act. La.Civ.Code art. 1607(2).[1] In this case, the 2012 document includes all of the required elements for a valid authentic act: (1) it was executed before a notary public; (2) in the presence of two witnesses; and, (3) signed by Mr. Harlan, the notary public, and the two witnesses to the act. La.Civ.Code art. 1833.[2] As enunciated by the appellate court, there is no requirement that an authentic act "must include a statement that the document was executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before it was executed." Succession of Harlan , 16-1346, p. 5 (La.App. 1 Cir. 6/6/17), 2017 WL 2445187 (unpublished). Nor does the law require that the person executing an authentic act sign *229 every page of the document. Id. Thus, there is no legal basis for the majority's finding that the 2012 document does not constitute a valid authentic act.
The second sentence of the 2012 document states, "Any prior wills are hereby revoked." With this provision, the 2012 document validly revokes Mr. Harlan's prior testaments. Prior to 1999, the law required that revocations of testaments be in the same form as prescribed for testaments. See, Succession of Ryan, 228 La. 447, 452, 82 So.2d 759, 761 (La.1955). However, the law was changed with the revision of Article 1607, which provides that an entire testament can be revoked when the testator so declares in an authentic act. La.Civ.Code art. 1607(2).
In this case, the appellate court did not rule that an absolutely null notarial testament can revoke prior testaments. Instead, the appellate court ruled that a valid authentic act can revoke prior testaments. See also, In re Hendricks , 08-1914 (La.App. 1 Cir. 9/23/09), 28 So.3d 1057, 1058-59, writ not considered , 10-480 (La. 3/26/10), 29 So.3d 1256. A testament and an authentic act are distinct instruments under Louisiana law. The validity of one does not depend upon the validity of the other. An invalid testament is absolutely null; thus, it has no power to render an authentic act invalid. La.Civ.Code art. 1573.
Additionally, though it is true that the testator's intent controls the interpretation of a testament, it is appropriate to look to the testator's intent only when the testament is valid and in proper form . See, e.g., In re Succession of Duskin , 14-236, p. 12 (La.App. 4 Cir. 11/19/14), 153 So.3d 567, 575, writ not considered, 15-0137 (La. 4/10/15), 163 So.3d 800. Here, the 2012 purported testament is not a valid testament; however, the 2012 document serves as a valid authentic act revoking Mr. Harlan's prior testaments, since the revocation provision remains intact, and all elements of a valid authentic act are met.
The majority's assertion that an authentic act revoking a testament must be found in a separate document is flawed. I agree with the majority's assessment that La.Civ.Code art. 1607 must be read together with La.Civ.Code art. 1833 to determine the requirements for a valid authentic act for the purposes of revoking an entire testament. I also agree that the word "or" as found in La.Civ.Code art. 1607(2) must be given a disjunctive meaning-that is, the provision authorizes a testamentary revocation in either "one of the forms prescribed for testaments or in an authentic act." (Emphasis added.) However, the 2012 document clearly fell into only one of these categories , namely that of an authentic act, as the form prescribed for testaments was not satisfied in this case. The plain language of La.Civ.Code art. 1607(2) does not prohibit a revocation clause within a valid authentic act from serving as an effective revocation of prior testaments. Moreover, if the Legislature intended for a revocation to occur only via a valid testament or a separate authentic act, it could have specified as such. The Legislature has not done so; therefore, this Court has a duty to apply La.Civ.Code arts. 1607 and 1833 as written. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. The plain language of these articles as applied to this case results in the revocation of the decedent's prior testament via a valid authentic act, regardless of the fact that the act is contained within an otherwise invalid testament rather than in a separate document.
*230 For the foregoing reasons, I would affirm the appellate court's judgment upholding the 2012 document as a valid authentic act revoking Mr. Harlan's prior testaments.

At this juncture in the district court proceedings, the parties had, in essence, swapped legal positions on the issue of the validity of the revocation clause, with Hansel and his siblings adopting the argument previously urged by Xiaoping (i.e., that the invalid 2012 testament was valid as an authentic act so that the revocation was effective) and with Xiaoping then arguing that the revocation clause could not be resurrected from the invalid 2012 testament.

Article 1577 provides:
The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _________, ____."
See also Successions of Toney , 16-1534 at p. 6, 226 So.3d at 402 ; In re Succession of Richardson , 05-0552, p. 4 (La. App. 1 Cir. 3/24/06), 934 So.2d 749, 751, writ denied, 06-0896 (La. 6/2/06), 929 So.2d 1265 ; Succession of English , 508 So.2d 631, 633 (La. App. 2 Cir. 1987) (holding that the complete absence of an attestation clause is fatal to the validity of a notarial will).

Article 1833 provides, in pertinent part: "An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. The typed or hand-printed name of each person shall be placed in a legible form immediately beneath the signature of each person signing the act."

It is well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. M.J. Farms, Ltd. v. Exxon Mobil Corporation , 07-2371 at pp. 13-14, 998 So.2d at 27.

See La. C.C. art. 1917 ("The rules of this title [Title IV, "Conventional Obligations or Contracts"] are applicable also to obligations that arise from sources other than contract to the extent that those rules are compatible with the nature of those obligations."); La. C.C. art. 1917, 1984 Revision Comment (b) ("Under this Article, the general rules of contracts are applicable to declarations of will contained in unilateral acts ...."). See also Ronald J. Scalise Jr., Rethinking the Doctrine of Nullity, 74 La.L.Rev. 663, 673-74 (2014) (footnotes omitted) ("[A]cts that purport to be testaments but fail to follow the prescribed form requirements are also examples of absolutely null acts outside the context of contracts. A testament, as the Civil Code clearly states, is not a contract but an 'act' that has effect upon the death of the testator. In fact, a testament is a unilateral juridical act because it has only one party to the act, namely the testator, and is a 'licit act intended to have legal consequences.' Execution of a will in a form other than that prescribed by law results in an absolute nullity. Countless other acts are treated similarly, but the point is obvious; despite their placement in the Civil Code, the articles on nullity are not limited in their application to contracts. They apply to all juridical acts, including those that are unilateral.").

La. C.C. art. 2033 provides, in pertinent part:
An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.

Courts need not strictly adhere to the formal requirements of the statutory will, to the extent of elevating form over function. In re Succession of Holbrook , 13-1181, p. 8 (La. 1/28/14), 144 So.3d 845, 851 ; Succession of Guezuraga , 512 So.2d 366, 368 (La. 1987). Courts liberally construe and apply the laws governing notarial wills, La. C.C. art. 1576 et seq. (and former La. R.S. 9:2442, relative to statutory wills), maintaining the validity of the will if at all possible, as long as it is in substantial compliance with the statute. Id.See also Successions of Toney , 16-1534 at p. 6, 226 So.3d at 402.

"Civil Code Article 1573 unequivocally states that '[t]he formalities prescribed for the execution of a testament must be observed or the testament is absolutely null' and no other provision of the Civil Code casts doubt upon this classification." Ronald J. Scalise Jr., Rethinking the Doctrine of Nullity, 74 La.L.Rev. 663, 714 (2014). "In short, a donation mortis causa not in proper form is an absolute nullity. This means, of course, that it can be raised by anyone, cannot be confirmed, and most importantly is imprescriptible." Id. at 715 (footnote omitted).

We note the dissent in In re Hendricks , 08-1914 (La. App. 1 Cir. 9/23/09), 28 So.3d 1057, writ not considered, 10-0480 (La. 3/26/10), 29 So.3d 1256 : "[T]he majority ... holds that while the will is invalid as a testament, it is nevertheless a valid revocation of the previous will. In my opinion, this is contrary to the testator's intent. Mr. Hendricks clearly did not desire to die intestate, but rather attempted to substitute his new testament for the old one, as opposed to executing a separate authentic act of revocation. To find the 2006 will null 'ab initio', which means 'from the beginning,' yet to enforce its revocation clause, defies common sense .... [T]he majority's interpretation of LSA-C.C. art. 1573 essentially adds language, which is not part of ... [A]rticle [1573], i.e., that the testament is absolutely null 'as a testament.' " (Footnote omitted.)

Having decided the merits of this case on this basis, we find it unnecessary to address the relator's claim that, in order to be valid, an authentic act must state that the act was signed "in the presence of" the two witnesses, the notary public, and each other.

Louisiana Civil Code article 1607 states (emphasis added):
Revocation of an entire testament occurs when the testator does any of the following:
(1) Physically destroys the testament, or has it destroyed at his direction.
(2) So declares in one of the forms prescribed for testaments or in an authentic act.
(3) Identifies and clearly revokes the testament by a writing that is entirely written and signed by the testator in his own handwriting.

Louisiana Civil Code article 1833 provides, in pertinent part:
A. An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. The typed or hand-printed name of each person shall be placed in a legible form immediately beneath the signature of each person signing the act.
B. To be an authentic act, the writing need not be executed at one time or place, or before the same notary public or in the presence of the same witnesses, provided that each party who executes it does so before a notary public or other officer authorized to perform that function, and in the presence of two witnesses and each party, each witness, and each notary public signs it. The failure to include the typed or hand-printed name of each person signing the act shall not affect the validity or authenticity of the act.