# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**19-208**


**SUCCESSION OF PEGGY BLACKWELL BRUCE**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 58160
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and Jonathan W. Perry, Judges.


**AFFIRMED.**


**Perry, J., dissents and assigns reasons.**

**Winfield E. Little, Jr.**
**Little Law Firm**
**Post Office Box 3759**
**Lake Charles, Louisiana  70602**
**(337) 430-0907**
**COUNSEL FOR APPELLANT:**
        **Ginger Patton**


**Christopher J. Guillory**
**Christopher J. Guillory, L.L.C.**
**Post Office Box 13195**
**Lake Charles, Louisiana  70612**
**(337) 855-2130**
**COUNSEL FOR APPELLEE:**
        **Julian Bruce**

**SAUNDERS, Judge.**

In this succession case, the proponent of a notarial testament challenges the trial court's judgment declaring the testament an absolute nullity. For the reasons that follow, we affirm the trial court's judgment.

### FACTS

Peggy Blackwell Bruce (Peggy) died testate on June 15, 2018. In her last will and testament dated November 21, 2016, Peggy named her niece, Ginger Blackwell Patton (Ginger), as her sole legatee and executrix of her estate. Ginger filed a petition on June 18, 2018, to probate the will and to be appointed executrix. On that same date, the trial court signed an order admitting the will to probate and appointing Ginger executrix.

On June 20, 2018, Peggy's widower, Julian Bruce (Julian), filed a petition to annul the will and remove Ginger as executrix due to an allegedly defective attestation clause. Specifically, Julian alleged:

> The purported Last Will and Testament of "Peggy B. Bruce" contain[s] a fatally defective attestation clause which reads as follows:

> Signed on each page and declared by Testator, PEGGY B. BRUCE, above named, in our presence, to be her Last Will and Testament, and in the presence of the Testatrix and each other, we hereunto subscribed our names on this 21st day of November 2016.

> . . . .

> Specifically, the attestation clause contained in the said purported testament is fatally defective in that it:

> (1) Fails to confirm or declare that Mrs. Bruce signed "**at the end**" as well as "on each other separate page"; and

> (2) Fails to clearly specify that the witnesses and notary actually witnessed Mrs. Bruce's signing of the document.

Julian argued the attestation clause is not the same as the declaration provided by La.Civ.Code art. 1577(2); thus, the will is null and void.

In opposition, Ginger asserted the will was executed by the testator, witnesses, and notary as required by La.Civ.Code art. 1577. Specifically, Peggy signed the will:

(1) at the bottom of the first page, over a line with her printed name and the notation that it was "Page 1 of 2"; (2) after the end of Article IX[1] and an attestation clause that read

> IN WITNESS WHEREOF, in the presence of the undersigned Notary Public and competent witnesses, I have declared this to be my Last Will and Testament and have signed each page hereof on this the 21st [2] day of November, 2016, in Lake Charles, Calcasieu Parish, Louisiana.

(3) After another attestation clause that read

> Signed on each page and declared by Testator, PEGGY B. BRUCE, above named, in our presence, to be her Last Will and Testament, and in the presence of the Testatrix and each other, we hereunto subscribed our names on this the 21st [3] day of November 2016.

And (4) at the bottom of the second page over a line with her printed name and the notation that it was "Page 2 of 2".

The signature of the witnesses and notary also appear with Peggy's signature after the second attestation clause. Ginger contended the first attestation clause affirms Peggy signed in the presence of the witnesses and notary, and the second attestation clause affirms the witnesses and the notary were present when Peggy signed the will. Ginger asserted La.Civ.Code art. 1577(2) calls for the attestation clause to be substantially similar, not an exact reproduction of the example contained in the codal article. She admitted that the words "at the end" are not found in the attestation clause but argued that their absence are immaterial.

---

[1] Article IX is the last administrative article.

[2] "21st" is handwritten in a blank provided.

[3] "21st" is handwritten in a blank provided.

A hearing on the validity of the will was held on July 30, 2018.  The trial court found the only deviation from La.Civ.Code art. 1577(2) was the absence of the words "at the end" in the attestation clause.  It declared, "what is significant in my mind is that the attestation clause in question does not include the . . . the indication that the witnesses, including the notary . . . saw Mrs. Bruce sign at the end of each page.  That is significant language."  On August 29, 2018, the trial court signed a judgment, which granted Julian's petition to annul and removed Ginger as executrix.

Ginger filed a motion for new trial, citing the second circuit's opinion in *Succession of Dawson*, 51,005 (La.App. 2 Cir. 11/16/16), 210 So.3d 421.  Ginger asserted the *Dawson* court considered an attestation clause nearly identical to the attestation clause at issue herein.[4]  The *Dawson* plaintiffs argued that the attestation clause was defective because there was no indication that the testator signed the will at the end.  The court found the language of the will's attestation clause substantially complied with the required statutory language, stating:

> The attestation clause confirms that the testator declared that the instrument was his will and signed in the presence of the witnesses and notary on the stated date.  Although the attestation clause of the will is not identical to the statutory declaration that the testator signed the will "at the end," the will itself demonstrates that the testator signed at the bottom of page one after the provision bequeathing all property to the defendant and signed at the end of page two.  The authority cited by plaintiffs does not support their argument that the will, which is clearly signed by the testator at the end and on each separate page, is invalid because the attestation clause does not state that obvious fact.

---

[4] In *Dawson*, 210 So.3d at 425, the attestation clause stated:

> Signed and declared by Henry Earl Dawson, above named in our presence, on each of its pages, and declared by the Testator in our presence to be his last will and testament, and in the presence of the Testator and of each other, we, the undersigned Notary Public and witnesses, have hereunto subscribed our names this 28th day of February, 2013.

3

*Dawson*, 210 So.3d at 425. Ginger urged the trial court to vacate its judgment, arguing the trial court's judgment was contrary to the law. *See* La.Code Civ.P. art. 1972.

Julian opposed Ginger's motion, asserting that the supreme court's ruling in *Successions of Toney*, 16-1534 (La. 5/3/17), 226 So.3d 397, supported the trial court's ruling that the will's attestation clause was deficient. According to Julian, *Toney* "is a seminal ruling, finding that more strict [sic] adherence to [La.Civ.Code arts.] 1573 and 1577 is required for purposes of a will to be found in compliance." He offered *Succession of Ivey*, 17-653 (La.App. 3 Cir. 2/21/18), 238 So.3d 532, as exemplifying his understanding that *Toney* changed the law. Julian argued that instead of substantial compliance, *Toney* required strict conformity to the example contained in La.Civ.Code art. 1577(2). Further, Julian asserted that in *Ivey*, this court rejected the argument "there was no need for rigid application of the attestation clause requirements because there is no evidence of fraud herein[,]" explaining:

> The supreme court rejected this argument in *Toney*, 226 So.3d at 407, holding that the failure of an attestation clause to substantially comply with the requirements of La.Civ.Code art. 1577 renders it absolutely null, "even in the absence of fraud." The supreme court further stated, "Any language in previous jurisprudence which suggested otherwise is rejected[,]" making it clear that earlier jurisprudence which treated deviations from the testamentary form requirements leniently when fraud was not an issue no longer applies. *Toney*, 226 So.3d at 407.

*Ivey*, 238 So.3d 537. Thus, Julian argued there were no valid grounds for a new trial to be granted and urged the trial court to deny Ginger's motion.

A hearing on October 2, 2018 was held on Ginger's motion for new trial. The trial court declared, "[I]t seems to me that [*Toney*] does require strict compliance. . . . So[,] I think there's been a tightening up on the rules . . . . [T]he drafters of these attestation clauses need to pay closer attention to what should be included in these clauses." A judgment denying Ginger's motion was signed November 8, 2018.

4

Ginger appeals, arguing the trial court erred in requiring strict adherence to La.Civ.Code art. 1577(2) when it ruled the attestation clause must be the example contained in the codal article. She maintains that even without stating the testator signed "at the end" of the will, the attestation clause is substantially similar to the language found in La.Civ.Code art. 1577(2).

## DISCUSSION

The trial court's judgment rests upon its interpretation and application of the codal requirements to the will's attestation clause. An appellate court reviews questions of law under a *de novo* standard of review. *Succession of Harlan*, 17-1132 (La. 5/1/18), 250 So.3d 220.

"There is a presumption in favor of the validity of testaments in general, and proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption." *Toney*, 226 So.3d at 401 (citing *In re Succession of Holbrook*, 13-1181 (La. 1/28/14), 144 So.3d 845). However, La.Civ.Code art. 1573 decrees "[t]he formalities prescribed for the execution of a testament must be observed or the testament is absolutely null." Louisiana Civil Code Article 1577 specifies the form requirements for notarial testaments:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _____, _____."

The supreme court characterized *Toney*, 226 So.3d at 401, as "test[ing] the limits of what constitutes compliance with the formal requirements of La.Civ.Code art. 1577 for the purpose of confecting a valid notarial testament under Louisiana law." In upholding the lower courts' invalidation of a will, the supreme court underscored that La.Civ.Code art. 1573 "provides in no uncertain terms that '[t]he formalities prescribed for the execution of a testament **must** be observed or the testament is **absolutely null**.'"

Louisiana Civil Code Article 1577(2) requires the testator, notary, and witnesses declare what is "substantially similar" to the following provision:

> "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _____, _____."

"Although it is best practice to use the suggested language provided in [La.Civ.Code] art. 1577(2), it is not mandated." *Succession of Hanna*, 52,664, p. 8 (La.App. 2 Cir. 6/26/19), 277 So.3d 438, 442. *See also Succession of Pesnell*, 52,740 (La.App. 2 Cir. 6/26/19), 277 So.3d 842.

In this case, Peggy's signature appears at the end of the testament and on each page, as required by La.Civ.Code. art. 1577(1). However, the words "at the end" do not appear in the will's attestation clause. "At the end and on each separate page" is a formality listed in La.Civ.Code art. 1577(2). Strict adherence regarding the will's attestation clause is required for a will to be found to be in compliance. As such, the failure to include this formality is significant and material, and cannot be considered to be substantially similar. Accordingly, we affirm the trial court's ruling on this issue.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to Peggy Blackwell Bruce.

**AFFIRMED.**

SUCCESSION OF PEGGY BLACKWELL BRUCE


**PERRY, Judge, dissenting.**

I disagree with the majority's pronouncement that "[s]trict adherence regarding the will's attestation clause is required for a will to be found in compliance." *Slip Opinion* at 6. Our legislature allowed that the mandated attestation clause need only be "substantially similar" to the attestation clause provided in La.Civ.Code art. 1577(2). The majority of the supreme court did not proclaim in *Successions of Toney*, 16-1534 (La. 5/3/17), 226 So.3d 397, that it requires exactitude to the example contained in the codal article. Rather, our law observes a presumption in favor of the validity of testaments and evidence of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. *Id*. For a valid notarial will, "[t]here must be an attestation clause, or clause of declaration. However, **its form is not sacrosanct**. It may follow the form suggested in the statute or use a form **substantially similar** thereto." *Id*. at 405 (emphasis added).

The case *sub judice* is analogous to the recent case of *Succession of Pesnell*, 52,740 (La.App. 2 Cir. 6/26/19), 277 So.3d 842, *writ denied*, 19-1194 (La. 10/15/19), 280 So.3d 600, in which the validity of a will was upheld even though its attestation clause lacked the statutory language indicating the testator had signed his name "on each other separate page" of the testament. Our colleagues on the second circuit rightly noted, "although it is the best practice to use the sample

declaration provided in [La.Civ.Code] art. 1577(2), the legislature does not mandate that this language be used." *Id.* at 846-47.

In this case, the sole deviation from the codal requirements, or the suggested attestation clause, is the words "at the end" do not appear in the will's attestation clause. More importantly, the Testator's signature does appear at the end of the testament and on each page, as required by La.Civ.Code art. 1577(1). While the absence of the words "at the end" is a deviation from the suggested codal language, it is a minor deviation where the Testator's signature appears as La.Civ.Code art. 1577(1) requires. Contrary to the majority, I would find the will is executed in accordance with the formalities of La.Civ.Code art. 1577 and the language of the attestation clause is substantially similar to the language suggested in La.Civ.Code art. 1577(2).

Finally, invalidating the will because it fails to say the testator signed "at the end" exemplifies the concern expressed in Justice Weimer's dissent in *Toney*, in which he seemingly scorned "elevat[ing] form over the substance of what [the testator] intended." *Toney*, 226 So.3d at 409. Thus, I respectfully dissent.