GENOVESE, JUSTICE
hWe granted writs in this succession case to determine whether the testament at issue is valid under Louisiana law, where the first two pages of the testament were initialed rather than signed and where the testament contains no attestation clause which meets all of the requirements of La. Civ.Code art. 1577, nor any attestation by the notary beyond the gen *399 eral notarization. For the following reasons, we find the propounded testament materially deviated from the form requirements of La. Civ.Code art. 1577 and is thus absolutely null pursuant to La. Civ. Code art. 1573.
FACTUAL AND PROCEDURAL HISTORY
Ronnie Robert Toney, the decedent in this case, passed away on January 19, 2015 (hereinafter referred to as “Mr. Toney”). He was predeceased by his second wife, Jeannette Rena Toney, who died on October 18, 1999. Mrs. Toney had no children. In her will, which was executed on September 23, 1993, she bequeathed her entire estate to her husband, or, if he did not survive her, to Richie Glenn Gerding (hereinafter referred to as “Gerding” or “applicant).[1] Mrs. Toney’s succession was not opened immediately upon her death.
|9On April 13, 2015, Gerding filed a “Petition for Filing and Execution of Testaments and for Confirmation of Independent Executor,” with Mrs. Toney’s September 23, 1993 will attached, along with a document entitled “Last Will and Testament of Ronnie R. Toney,” dated August 2, 2014. Gerding sought to file and execute both testaments and to have the court appoint him as independent executor of the couple’s successions. Both testaments were probated. However, on May 6, 2015, John Huey Pierce Jenkins (hereinafter referred to as “Jenkins” or “plaintiff’), the uncle of Mr. Toney, filed a petition for annulment of the August 2, 2014 testament, alleging that “the purported notarial testament of the decedent is an absolute nullity for lack of form.” Specifically, the plaintiff alleged that the testament was not in compliance with the requirements of La. Civ.Code art. 1577, because the testament was not signed on each separate page, the attestation clause was not in proper form, and the notary, witnesses, and testator were not in the presence of each other at the execution of the testament.
The August 2, 2014 testament, as submitted by Gerding, consists of three numbered pages along with an attached, though unnumbered, affidavit. Instead of a full signature, only the printed initials “RT” are found on the bottom left corner of the first two pages of the testament, which contain all but the end of the last sentence of the dispositive provisions of the will. The third page of the testament begins with the conclusion of this sentence and appears as follows:
[...] shall be determined by such beneficiaries if they can agree, and if not, by my Executor.
IN WITNESS WHEREOF, I have subscribed my name below, this 2 day of August, 2014.
Testator Signature: Ronnie R Toney
[signed]
Ronnie R. Toney
|aWe, the undersigned, hereby certify that the above instrument, which consists of 3[2] pages, including the page(s) which contain the witness signatures, was signed in our sight and presence by Ronnie R. Toney (the “testator), who declared this instrument to be his/her Last Will and Testament and we, at the *400 Testator’s request and in the Testator’s sight and presence, and in the sight and presence of each other, do hereby subscribe our names as witnesses on the date shown above.
[This clause is followed by signatures of Angela Dutel, ’ Robert A. Davis, and William J. Orazio, Jr.]
An additional, unnumbered page entitled “Affidavit” is attached to the three-paged testament and appears as follows:
I, Ronnie'R. Toney, the Testator, sign my name to this instrument this 2 day of August, 2014, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my Will and that I sign it willingly, in the presence of the undersigned witnesses, that I execute it as my free and voluntary act for the purposes expressed in the Will, and that I am eighteen years üf age or older, of sound mind, and under no constraint or undue influence.
Testator Signature: Ronnie R. Toney [signed]
Ronnie R. Toney
We, Angela Dutel and Robert A. Davis and William Orazio, the witnesses, sign our names to this instrument, being first duly sworn, and do hereby declare to the undersigned authority that the Testator signs and executes this instrument as the Testator’s will and that the Testator signs it willingly, and that the Testator executes it.as the Testator’s free and voluntary act for the purposes expressed in the well, and that each of us, in the presence and hearing of the Testator, at the Testator’s request, and in the presence of each other, hereby signs this will, on the date of the instrument, as witnesses to the Testator’s signing, and that to the best of our knowledge the Testator is eighteen years of age or older, of sound mind and memory, and under no constraint -or undue influence, and the witnesses are of adult age and otherwise competent to be witnesses.
Three witnesses’ signatures are found under this provision, with the third witness’s signature falling on the following page. The affidavit then concludes:,
STATE OF LOUISIANA
COUNTY OF (NOT COUNTY) [sic] PARISH OF ST. TAMMANY
I ¿Subscribed, sworn to and acknowledged by Ronnie R. Toney, the Testator; and subscribed and sworn to before me by Angela Dutel and Robert A. Davis and William Orazio, witnesses;'this 2 day of August 2014.
Louis G. Dutel III, 66⅛15 [signed]
Notary public, or other officer authorized to take and certify acknowledgments and administer oaths.
[Louis Dutel’s notarial stamp and Ronnie R. Toney’s full signature are also found on the concluding page of- the affidavit.]
After a hearing in' which the parties stipulated that Jenkins was the nearest heir of Toney, the trial court judge found that the testament in question was absolutely null for lack of form, stating in oral reasons'that, in his' opinion, although the initials instead of a signature by itself would have been sufficient to meet the 'requirements of the notarial will, the attestation clause was also deficient, as it did not address whether the witnesses attested to viewing the testator sign each page, which is a requirement.
The Court of Appeal affirmed, finding the will did not substantially comply with the requirements of La. Civ. Code art. 1577, because it failed “to state that the testator declared, in the presence of the notary, that the testament was his last will and testament or that all persons signed in the presence of each other, including the *401 notary.” Successions of Toney, 2015-1928, p. 5 (La.App. 1 Cir. 6/3/16), 195 So.3d 672, 675, unit granted 16-1534 (La. 12/16/16), 212 So.3d 1168. Judge Higginbotham dissented, noting that no fraud was indicated or pled and finding that the clause signed by the notary substantially complies with the requirements of La.- Civ.Code art. 1577 in light of this court’s holding in In re Succession of Holbrook, 13-1181 (La. 1/28/14), 144 So.3d 845. Jenkins subsequently appealed the First Circuit’s holding, and this court granted writs.
LAW AND ANALYSIS
LThis case tests the limits of what constitutes compliance with the formal requirements of La. Civ.Code. art. 1577 for the purpose of confecting a valid notarial testament under Louisiana law. The notarial testament is one of only two forms of testaments currently permissible under Louisiana law—the other being the olographic, or handwritten, testament. There is a presumption in favor of the validity of testaments in general, and proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. In re Succession of Holbrook, p.11, 144 So.3d at 853. However, the Civil Code also provides in no uncertain terms that “[t]he formalities prescribed for the execution of a testament must be observed or the testament is absolutely null,” La. Civ.Code art, 1573 (emphasis added). Nevertheless, the codal article which provides the form requirements for the notarial testament does contain an allowance that the mandated attestation clause need only be “substantially similar” to the sample declaration provided in statute:
Louisiana Civil Code Art. 1577. Requirements of Form.
The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
(1) In the presence, of a notary.and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name of at the end of the testament and on each other separate page.
(2) ■ In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: “In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our' names this — day of-,-.”
The notarial testament was added to the Civil Code in the 1997 revision. Comment (a) to La. Civ.Code art. 1577 provides “[t]his article reproduces the | (¡substance of R.S. 9:2442. It does not change the law.” Thus, case law regarding both La. Civ. Code art. 1557 and its predecessor, La. R.S. 9:2442, is instructive.
The applicant argues that the lower courts’ holdings, finding no substantial compliance with La. Civ.Code art. 1577 in this case, are in direct conflict with In re Succession of Holbrook, 144 So.3d 845. In Holbrook, the only flaw with the testament at issue was -the. failure to- specify the “day” in the date contained in the attestation clause. In analyzing the validity of the testament, this court first noted that “[a]l-though [La. Civ.Code] Art. 1577, like former La.Rev.Stat. 9:2442, mandates the will be dated, it does not specify the location in the testament where the date must, appear.” Id. at 850. Summarizing previous case law, the court stated:
*402 Louisiana courts have held that the complete absence of an attestation clause vdll be fatal to the validity of a notarial will. See In re Succession of Richardson, 05-0552 (La.App. 1 Cir. 3/24/06), 934 So.2d 749, writ denied, 06-0896 (La. 6/2/06), 929 So.2d 1265; Succession of English, 508 So.2d 631, 633 (La. App. 2 Cir. 1987). However, courts have also held the attestation clause itself must only be “substantially similar” to the attestation clause in Art. 1577, such that minor deviations in form with regard to the date in the attestation clause do not render the testament invalid in the absence of any indication of fraud. See In re Succession of Hebert, 12-281 (La. App. 3 Cir. 10/3/12), 101 So.3d 131; Succession of Armstrong, 93-2385 (La.App. 4 Cir. 4/18/94), 636 So.2d 1109, writ denied, 94-1370 (La. 9/16/94), 642 So.2d 196; cf. Succession of Bel, 377 So.2d 1380 (La. App. 4 Cir. 1979)(statutory will that contained a date in the attestation clause but not in the will itself was nevertheless valid).
Id. at 852 (emphasis added). Importantly, in Holbrook, the full date was unambiguously referenced on each page of the testament, despite its absence in the attestation clause, and the attestation clause itself was located between two unambiguous references to the full date. Thus, the oversight of failing to mention the day within the attestation clause constituted a “minor deviation,” and this courts found the attestation clause was thus “substantially similar” to the form found in La. Civ.Code. art 1577(2).
The applicant rightly notes that this court in Holbrook relied heavily on our previous decision in Succession of Guezuraga, 512 So.2d 366 (La. 1987). In Guezu-raga, the attack on the validity of the testament at issue was based exclusively on the decedent’s failure to sign the second page, which contained the conclusion of the testament’s attestation clause. The applicable statutory provision in that case was La. R.S. 9:2442(B)(l)(emphasis added), which, similar to current La. Civ.Code. art. 1577, required that:
In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will and shall sign his name at the end of the will and on each separate page of the instrument.
Opponents to the will in Guezuraga argued that the term “will” referred only to the dispositive provisions, but that the term “instrument” encompassed the entire document, including the attestation clause. Because the testator had not signed the second page of the will, which included the end of the attestation clause, the opponents argued the will was invalid under a strict reading of the La. R.S. 9:2442(B)(1). This court disagreed, explaining:
But we are not required to ' give the statutory will a strict interpretation. The Legislature adopted the statutory will from the common law in order to avoid the rigid formal requirements of the Louisiana Civil Code. “The minimal formal requirements of the statutory will are only designed to provide a simplified means for a testator to express his testamentary intent and to assure, through his signification and his signing in the presence of a notary and two witnesses, that the instrument was intended to be his last will.” Succession of Porche v. Mouch, 288 So.2d 27, 30 (La.1973). In accordance with this legislative intent, courts liberally construe and apply the statute, maintaining the validity of the will if at all possible, as long as it is in substantial compliance with the statute. Note, Louisiana’s Statutory Will: The Role of Formal Requirements, 32 La. L.Rev. 452, 453 (1972). In deciding what *403 constitutes substantial compliance, the courts look to the purpose of the formal requirements-to guard against fraud.
Guezuraga, 512 So.2d at 368.[3] Relying on Guezuraga and on the fact that the trial court stated orally that it found no evidence of fraud in this case, the applicant seeks to have this court apply the guideline suggested by a law review article quoted favorably in that opinion: “When the departure from form has nothing whatsoever to do with fraud, ordinary common sense dictates that such departure should not produce nullity.” Id. at 368 (quoting Casenote, Donations—Imperfect Compliance with the Formal Requirements of the Statutory Will, 15 Loy. L. Rev. 362, 371 (1968-69)).[4] However, as shown below, Guezeraga presented a distinguishable factual scenario in which this court faced only a slight irregularity in the placement of the testator’s signature. In contrast, applying this guideline as) c, suggested by applicant to uphold the validity of the testament at issue in this case would eviscerate the clear formal requirements of the Civil Code as put in place by the legislature.
In determining whether the will at issue was invalid for the testator’s failure to sign the final page containing the conclusion of the attestation clause, the Guezuraga court carefully examined the history and statutory construction of La. R.S. 9:2442 and concluded that, under the statute as amended, “[i]t is now clear that the testator need not sign after the attestation clause!;]” thus, the lack of the signature on the second page containing only the conclusion of the attestation clause did not *404 invalidate the will. Id. at 369 (citation omitted). In contrast, after an examination of La. Civ.Code. art. 1577⅛ history and construction, we find no indication that the testator in this case met the legal formality requirements for the notarial will. While- it is true' that past Louisiana courts have validated notarial wills containing minor deviations from the statutory—and now codal—requirements, we find no error in the lower courts’ conclusion that the testament in the present case, viewed in its entirety, along with the attached affidavit, does not substantially comply with the formal requirements of La. Civ.Code art. 1577.
The propounded testament in the present case failed to comply with the formal requirements of La. Civ.Code art. 1577, in a several respects. First, La. Civ.Code art. 1557(1) requires that the testator “shall sign his name-of-at the end of the tester merit and on each other separate page.” (Emphasis added). In this case, the first two pages of the will are not signed, but are only initialed “R.T.” Further,- the initials are in print rather than cursive writing. Although signatures come in a variety of forms, and although a few appellate courts have upheld wills where] ]n some pages were initialed rather than signed,[5] we note that La. Civ.Code art. 1557(1) unambiguously requires the testator to “sign his name at the end of the testament and on each other separate page,” and merely initialing undoubtedly falls' short of this ■ requirement. Particularly where, as here, the initials are written in easily imitable print rather than cursive, we are hesitant to find that this deviation from the codal requirement is merely minor or technical. Although fraud was not alleged at the trial court level, signing one’s name on each page of the will undoubtedly offers more heightened protection from surreptitious replacement of pages than mere ini *405 tialing, particularly when the initialing is in print rather than cursive as is found here.
|nSecond, we find that the various clauses contained in the testament and the affidavit, even considered in aggregate, are not substantially similar to the sample attestation clause contained in La. Civ. Code art. 1577(2), which states:
In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: “In our presence the testator has .declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this — day of-,-.”
With regard to the attestation clause requirement, this court has stated:
There must be an attestation clause, or clause of declaration. However, its form is not sacrosanct: It may follow the form suggested in the statute or use a form substantially similar thereto. The attestation clause is designed to evince that the facts and circumstances of the confection and execution of the instrument conform to the statutory requirements. In construing the attestation clause of this type of will, this court has been most liberal in its determination of whether the clause complies in form and whether it evidences the requisites to supply validity to the instrument.
Succession of Morgan, 257 La. 380, 385, 242 So.2d 551, 552-3 (1970) (citations omitted).
In Succession of Brown, 458 So.2d 140, 143 (La.App. 1 Cir. 1984), the First Circuit succinctly summarized the three required elements of a valid attestation clause under La. R.S. 9:2442(B)(2), La Civ. Code, art. 1577(2)’s similarly-worded counterpart, as follows:
The attestation clause set forth in the statute.., requires the notary and witnesses to declare (1) the testator signed the will at its end and on each separate page, (2) the testator declared in the presence of the notary and witnesses that it (the instrument) was his will, and 3) in the presences of the testator and each other, they (the notary and witnesses) signed their names on a specified date.
(Emphasis in original.) In this case, none of these three requirements is fully met. As to the first requirement, although the third page of the will states it “was signed in our [the three witnesses’] sight and presence,” it does not mention that the will was signed on each separate page as specified in the sample attestation clause. 118Additionally, neither the will nor the affidavit contains a declaration that the notary viewed the will being signed (only the affidavit is notarized). Similarly, as to the second clause, although the witnesses signed a clause affirming that the testator “declared this instrument to be his/her Last Will and Testament,” the notary made no such declaration. Finally, as- to the third requirement, although the witnesses declare “to the undersigned authority... that each of us,- in the presence and hearing of the Testator ... and in the presence of each other, hereby signs this will, on the date of the instrument” (emphasis added), the witnesses do not mention signing the will in the presence of the notary.
Established appellate jurisprudence holds that an attestation clause is defective when the clause does not indicate the notary and witnesses signed in the presence of the testator and each other. As noted by the Court of Appeal in this case, the alleged “attestation clauses” at issue in this case are nearly identical to the ones found deficient in In re Succession of Seal, *406 10-0351 (La.App. 1 Cir. 9/10/10), 2010 WL 3527597(unpublished), writ denied, 10-2294 (La. 1/28/11), 56 So.3d 964, in which the propounded testament was declared invalid.
In a similar case to the one at bar, In re Succession of Dunaway, 11-1747, 11-1748, pp. 7-8 (La.App. 1 Cir. 5/2/12), 92 So.3d 555, 559-560 (emphasis added), Judge Welch wrote as organ for the First Circuit:
This [testament’s attestation] clause states that the testator signed the testament in the presence of the witnesses and declared the testament to be his last will and testament to the witnesses. It also states that the witnesses signed the testament in the presence of the notary. However, this clause does not state that the testator signed the will in the presence of the notary, nor does it state that the testator specifically declared the testament to be his last will and testament to the notary or to the notary in the presence of two witnesses. Therefore, this clause fails to meet the requirements of La. C.C. art 1577.
Furthermore, the “[subscribed, sworn, and acknowledged” clause appears to be simply a general notarization of the will] m rather than an attestation clause of the notary because the clause does not clearly state that the testator declared that the testament was his/her last will and testament in the presence of the notary or that the necessary signatures were signed in the presence of all persons, including the notary. As such, this clause is not in compliance with' La. C.C. art. 1577.
We agree with the First Circuit’s analysis, which emphasizes La. Civ.Code art. 1577(2)’s requirement that “[i]n the presences of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar... ’’(emphasis added).[6] It is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Guillory v. Pelican Real Estate, Inc., 2014-1539, 2104-1593, 2014-1624, p. 3 (La. 3/17/15), 165 So.3d 875, 877; Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360, p. 9 (La. 12/3/03), 860 So.2d 1112, 1119. If the legislature had desired that such generic notarization language suffice for purposes of the notarial will, it could have simply required notarial testaments to be formalized via authentic act.
Indeed, although Louisiana’s “notarial will”—previously called the “statutory will”—may have been originally inspired by American common law, its requirement of notarization is unique.[7] Louisiana’s notarial testament also deviates from the requirements found in most of the rest of country in other ways, including requiring a signature on every page and requiring the witnesses expressly to sign an attestation clause indicating the testator declared the instrument signed to be hiflu will.[8] In *407 his brief, the applicant suggests that the testament at issue originated from a form found on the internet. This hypothesis is supported by the appearance of the word “COUNTY” in the affidavit. Although we are sympathetic to the fact that a testator could errantly use such a form in ignorance, to hold the propounded testament in substantial compliance with La. Civ.Code. art. 1577 would essentially negate any value to the distinct form requirements which our legislature has chosen to put in place. Further, the legislature has provided a significant benefit for testaments which comply with these unique requirements: the notarial testament does not need to be proved, and “[u]pon production of the testament, the court shall order it filed and executed and this order shall have the effect of probate.” La. C.C.P. art. 2891. Whether it is prudent to further reduce testamentary form requirements so as to more liberally encompass those commonly found in other states is a question of policy reserved to the purview of the legislature.
The standard announced in Guezu-raga and applied in Holbrook emphasizes liberal interpretation of testaments in order to maintain the validity of a will if at all possible, as long as it is in “substantial compliance” with the statute. In deciding what constitutes “substantial compliance,” Guezuraga and Holbrook state that the courts are to look to purpose of the formal requirements, ie., to guard against fraud. However, as discussed above, the facts of these cases presented only minor technical omissions. Such “slight departures” or “minor deviations”, where there is no indication or allegation of fraud, may support a finding of substantial compliance with the formal requirements of La. Civ.Code art. 1577.[9] In contrast, | ^Louisiana courts have held statutory and notarial wills invalid when they contain material deviations from form requirements, even in the absence of any indication of fraud.[10] Any language in previous jurisprudence which suggested otherwise is rejected.
Although the trial court stated orally that “there does not seem to be any indication of fraud,” we find the deviations from required testamentary form in this case are significant and material; thus, we agree with the lower,courts’ finding that the will did not substantially comply with La. Civ.Code art. 1577. The first two pages of the will are merely initialed rather than signed, and it is undisputed that no attestation clause indicates that the testator declared, in the presence of the notary, that the testament was his last will and testament, or that all persons signed in the presence of each other, including the notary. The applicant asks this court to recon *408 struct a valid attestation clause out of parts of three separate clauses, one of which is the ordinary notarial certification attached to any authentic act; however, we agree with the Court of Appeal that the clauses at issue did not substantially, comply with the codal requirements for an attestation clause. Likewise, the lower courts did not err in finding the testament invalid pursuant to La. Civ.Code. art. 1577.
In the applicant’s view, the First Circuit’s legal error requiring strict compliance in this case has been “metastasizing” throughout the jurisprudence. We believe, however, that it is the applicant’s suggested interpretation of law which would encourage metastization of legal error through the suggestion that) lfl generic, multistate templates, which are significantly more lenient than the form prescribed by our legislature, are nevertheless substantially compliant with the requirements of La. Civ.Code art. 1577.
In the alternative, the applicant seeks to have this court remand the case for further proceedings so the parties can put on evidence to demonstrate whether the will was in procedural compliance with La. Civ.Code art. 1577. However, as shown above, the testament itself failed to include the mandatory elements specified in La. Civ.Code art. 1577. While extrinsic evidence may be used to resolve ambiguity in a testament,[11] extrinsic evidence cannot cure a testament which is materially defective on its face. The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null. La. Civ.Code art. 1573. As the testament propounded in this case materially deviated from the requirements of La. Civ. Code art. 1577 as described in detail above, we find the lower courts correctly held that it is absolutely null.
DECREE
| i7For the foregoing reasons, the judgment of the lower court is affirmed. AFFIRMED.

. Richie Glenn Gerding is the brother of Jeannette Toney. As the proponent of the will, Gerding alleges that Ronnie Toney executed a similar will on the same day in 1993. However, a copy of this alleged will is not contained in the record before us, nor is any other evidence of the alleged will.

. The number "3” is handwritten in a blank provided and appears to have been written over the number "4."

. Notably, Guezuraga pertained to a statutory will formulated under La. R.S. 9:2442. Although La. R.S. 9:2442 mayhave been created to "avoid the rigid formal requirements of the Louisiana Civil Code,” current La. Civ. Code. art. 1577 is obviously a part of the Louisiana Civil Code, which also contains La. Civ.Code art. 1573, providing that testaments which do not follow the prescribed formalities are absolutely null. As noted by Justice Marcus in his dissent in Evans v. Evans, 410 So.2d 729, 733 (La. 1982), the predecessor article to La. Civ.Code. art. 1573 in that case, then La. Civ.Code art. 1595 (which provided "[t]he formalities, to which testaments are subject by the provisions of the present section must be observed, otherwise the testaments are null and void”) arguably did not apply to La. R.S. 9:2442, as this statute was not located in the Civil Code. Thus, the court in Guezuraga was not constrained by this co-dal provision in its interpretation of La. R.S. 9:2442.

. Guezuraga, 512 So.2d at 368 included the following quotation from Casenote, Donations—Imperfect Compliance with the Formal Requirements of the Statutory Will, 15 Loy. L. Rev. 362, 371 (1968-69):
Where the departure from form has nothing whatsoever to do with fraud, ordinary common sense dictates that such departure should not produce nullity. It was the intent of the legislature to reduce form to the minimum necessary to prevent fraud. It is submitted that in keeping with this intent, slight departures from form should be viewed in the light of their probable cause. If they indicate an increased likelihood that fraud may have been perpetrated they would be considered substantial and thus a cause to nullify the will. If not, they should be disregarded. Thus testators and estate planners will have the security that the legislature intended to give them.
The above language comes from the conclusion section of a law review case note which summarized contemporary appellate case law at the time the note was written in 1969, and it is intended to suggest a guideline for future interpretation of "statutory wills” under La. R.S. 9:2442 in light of preceding case law. Although it is true that the "statutory will” was originally formulated to create a minimum form necessary to protect against fraud, those minimum requirements must still be met. Additionally, we note that although this form was previously called the “statutory will,” it has since been renamed as the "notarial will” and moved into the Civil Code. Thus, we must apply the principles of interpretation found in the Civil Code to the contents of La. Civ.Code art. 1577 and related articles.

. For example, the applicant cites Succession of Squires, 93-1589 (La.App. 3 Cir. 6/1/94), 640 So.2d 813, writ denied, 94-1660 (La. 9/16/94), 642 So.2d 199. In that case, the testator only initialed the first page of his will, but fully signed the final page, which contained the following attestation clause:
We hereby declare that GEORGE HEBERT SQUIRES signed the foregoing instrument in our presence and in the presence of-each other,- declaring to us that the foregoing instrument is his Last Will .and Testament, and he requests us to sign the same as subscribing witnesses thereto which we now do in the presence of each other and of the Testator on this 23rd day of September, 199.0.
Analyzing this attestation clause, the Third Circuit cited to Guezuraga and noted that, like in Guezurqga, the opponents of the will made no allegation of fraud, Also, in Squires, the notary and one of the witnesses testified they saw the testator initial the first page and sign his name to the last two pages. Without any evidence to contradict this testimony, the Third Circuit found that the testator clearly intended the document to be his Last Will and Testament. The Third Circuit concluded:
Counsel have not cited, nor do we find any case involving either of the two precise issues presented, i.e, (1) initials, instead of signing, or (2) failure of the attestation clause to state that the notary and witnesses saw the testator sign each page. However, under the rule quoted above from Guezura-ga, we find these, are minor departures from .[sic] and have nothing to do with any attempted fraud. Common sense dictates that they should not nullify the clear intent of the testator.
Succession of Squires, 640 So.2d at 815.
In support, the applicant also cites Succession of Armstrong, 93-2385, p. 1 (La.App. 4. Cir. 4/28/94), 636 So.2d 1109, 1110 writ denied, 94-1370 (La. 9/16/94), 642 So.2d 196, in which the Fourth Circuit held:
Although the decedent placed only his initials on the bottom of page one as opposed to a more formal signature, his initials suffice for his signature, See Succession of Butler, 152 So.2d 239 (La.App. 4th Cir,), writ refused, 244 La. 668, 153 So.2d 882 (La. 1963). There is little formality required for signatures which come in all shapes and sizes' and are often illegible.

. See also, In re Succession of Ballex, 12-1571 (La.App. 1 Cir. 7/31/13), 2013 WL 3961203 (not designated for publication); Succession of Smith, 49,118 (La.App. 2 Cir. 8/13/14), 146 So.3d 917; and Matter of Succession of Biscamp, 16-673 (La.App. 3 Cir. 2/1/17), 211 So.3d 472. But see, Succession of Armstrong, 636 So.2d 1109; In re Succession of Hebert, 2012-281 (La.App. 3 Cir. 10/3/12), 101 So.3d 131.

. See Ronald J. Scalise, Jr., Testamentary Formalities in the United States of America, in Comparative Succession Law, Volume One, p.369, fn. 103 (Reid, Waal and Zimmerman, eds.).

. Id. at p.364, fn. 62; pp. 367-8.

. See, e.g., Succession of Holbrook, 144 So.3d at 852 ("However, courts have also held the attestation clause itself must only be "substantially similar” to the attestation clause in Art. 1577, such that minor deviations in form with regard to the date in the attestation clause do not render the testament invalid in the absence of any indication of fraud.”(citations omitted)); Succession of Guezuraga, 512 So.2d at 368 ("It is submitted that in keeping with this intent, slight departures from form should be viewed in the light of their probable cause...").

. See, e.g., In re Hendricks, 2008-1914 (La. App. 1 Cir. 9/23/09), 28 So.3d 1057, 1060, writ not considered, 2010-0480 (La. 3/26/10), 29 So.3d 1256; Succession of Slay, 99-1753, p. 6-7 (La.App. 3 Cir. 5/17/00), 764 So.2d 102, writ denied, 00-2481 (La. 11/13/00), 774 So.2d 144; and Evans v. Evans, 410 So.2d 729, 733 (La. 1982) ("The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the codal requirements, even to bring about justice in the particular instance, since any material relaxation of the codal rule will open up a fruitful field for fraud, substitution, and imposition.” (quoting Succession of Roussel, 373 So.2d 155, 157 (La. 1979))).

. See, e.g. Succession of Holloway , 531 So.2d 431, 434 (La. 1988); Succession of Boyd, 306 So.2d 687, 689 (La. 1975).