# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #057

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **13th day of December, 2024** are as follows:

**BY Knoll, J.:**

2024-CC-00091      SUCCESSION OF JOHN WALLACE FRABBIELE (Parish of St. John the Baptist)

REVERSED. SEE OPINION.

Weimer, C.J., additionally concurs and assigns reasons and concurs in the reasons assigned by Justice Griffin.

Hughes, J., dissents for the reasons assigned by Justice Crain and additionally assigns reasons.

Crain, J., dissents and assigns reasons.

McCallum, J., dissents for the reasons assigned by Justice Crain.

Griffin, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00091

## SUCCESSION OF JOHN WALLACE FRABBIELE

On Supervisory Writ to the 40th Judicial District Court,
Parish of St. John the Baptist

**KNOLL, Justice *Pro Tempore*[*]**

This writ raises the issue of whether a notarial will satisfies the "shall sign his name" requirement set forth in La. C.C. art. 1577(1). The testator placed his initials on the first two pages of his three-page testament; he signed his name, however, only on the last page after the attestation clause. The trial court determined the notarial will was valid, finding the testator had sufficiently signed all three pages of his will pursuant to Article 1577; the appellate court denied writs.

We granted this writ application to consider whether the lower courts erred in finding the testament satisfied the mandatory signature requirements of Article 1577(1), which expressly mandates the testator "*shall* sign his name at the end of the testament and on *each other separate page*." Applying the statute's mandatory language, we find the testator's initials alone, on each other separate page, contravene and fail to satisfy the Article 1577(1) signing requirements. A testator's failure to sign his name on each page of the notarial testament is a material deviation rendering the will invalid. For the following reasons, we reverse the lower courts, finding the testament an absolute nullity.

### FACTS AND PROCEDURAL HISTORY

In 2008, John Wallace Frabbiele executed a three-page document purporting to be his last will and testament. In the testament, John bequeathed the disposable

---

* Justice Jeannette Theriot Knoll, retired, appointed Justice *Pro Tempore*, sitting for the vacancy in Louisiana Supreme Court District 3.

portion of his estate to his third wife, Barbara Ann Nash Frabbiele, and the forced portion to his son Anthony subject to Barbara's usufruct. The instrument was executed before two witnesses and a notary public. The attestation clause at the end of the will employed the language supplied by Article 1577(2).[1]

John died in 2021. Barbara opened his succession by filing the original will with a petition, seeking an *ex parte* order probating the testament and appointing her executrix of John's estate. Acting on the petition, the trial court signed an *ex parte* order recognizing the will as John's "Notarial Last Will and Testament," ordering it to be executed, and declaring "this Order shall have the effect of Probate."

On the same day, an opposition to the petition to probate was filed by John's seven adult children, all from his first marriage: Lisa Beth Frabbiele, Janine F. DeSoto, Michele F. Beck, Patty Rene Frabbiele, Teresa F. Lawson, Rebecca F. Perry, and Anthony Frabbiele. The opposition alleged the will was defective because "[t]he first and second pages only bear what appears to be the initials of Decedent." These "markings," according to the opposition, do not comply with La. C.C. art. 1577(1), which provides the testator "shall sign his name" at the end of the testament and on each other separate page.

The matter proceeded to a contradictory hearing where the only evidence presented was the will. No witnesses testified, and no other documents were introduced. Ruling from the bench, the trial court found the will substantially complied with Article 1577. In written reasons, the trial court explained:

> Initialing the testament on page one and two did not create any ambiguity, in fact it strengthen[ed] the ability to compare the varied marks of the testator to increase security of the testament. […]

---

[1] La. C.C. art. 1577(2) reads:

> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ___ day of _____, _____."

[A] person's signature exist[s] in a situational manner and may not be precisely consistent. [The opponents] never introduced any information [or] testimony . . . that the mark placed on the other pages were not a valid signature or mark, as a signature or mark represents and are dictated in style and substance by the maker.

The trial court's written judgment expressly found the will substantially complied with Article 1577, and ordered it probated. A writ application to the court of appeal was denied, with one judge dissenting. *See Succession of Frabbiele*, 23-527 (La. App. 5 Cir. 12/20/23) (J. Schlegel, dissenting). In denying the writ, the appellate court stated: "[u]pon *de novo* review, we cannot conclude that the trial court erred in finding that the decedent's notarial will substantially complied with La. C.C. art. 1577, and ordering the will to be probated."

We granted a writ of certiorari, *Succession of Frabbiele*, 24-0091 (La. 4/3/24), 382 So. 3d 104, to determine if the testator's initials on "each other separate page" rather than his signature satisfy the mandatory language of Article 1577(1) when the testator's signed name appears only on the last page of the testament, after the attestation clause. We find the testator's initials, rather than his signed name, are a material deviation from the Article. The testator's signature after the attestation clause cannot cure this material defect; thus, the will is invalid.

## LAW AND DISCUSSION

The sole issue before this Court is whether the testator's initials comport with the Civil Code formalities prescribed for the execution of a notarial will under La. C.C. art. 1577.

As noted, the first two pages of the will bear the testator's initials in cursive, and the last page his full signature. For illustrative purposes, the last page of the will contains the following cursive inscription on a line above the testator's typed, full legal name below the attestation clause:



JOHN WALLACE FRABBIELE

The following cursive inscriptions are on the bottom of pages one and two, respectively; unlike the signature on the last page, they appear without the testator's typed legal name below them:

A cursory glance of the foregoing reflects a clear distinction between the testator's initials and his full signature. In light of this, our only task is to determine, for purposes of Article 1577(1), whether initials and signatures are equivalent. This is a simple matter of statutory application; interpretation is unnecessary. However, policy considerations inherent in the mandatory language of Article 1577 are raised for our consideration.

The notarial will is the codal successor of the statutory will. Its minimal formal requirements "provide a simplified means for a testator to express his testamentary intent and to assure, through his signification and his signing in the presence of a notary and two witnesses, that the instrument was intended to be his last will." *Succession of Porche*, 288 So. 2d 27, 30 (La. 1973). It is well-settled the primary motivation for enacting the codal requirements for notarial wills was the prevention of fraud.[2] However, evidence of fraud is not required to render a notarial will invalid

---

[2] *See* Ronald J. Scalise, Jr., Will Formalities in Louisiana: Yesterday, Today, and Tomorrow, 80 La. L. Rev. 1331, 1344 (2020) ("Form requirements exist for a reason--primarily to prevent fraud, mistake, undue influence, and uncertainty. To relax the form requirements is to increase the risk for fraud."); *See also Succession of Roussel*, 373 So. 2d 155, 158 (La. 1979).

for noncompliance with the mandatory requirements. In *Succession of Roussel*, 373 So. 2d 155 (La. 1979), we noted:

> The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, *since any material relaxation of the statutory or codal rule will open up a fruitful field for fraud, substitution, and imposition.*

*Id.* at 157 (emphasis added).

Louisiana Civil Code article 1576 specifies notarial wills are those "executed in accordance with the formalities of Articles 1577 through 1580.1." Under Article 1577, the "[r]equirements of form" to execute a valid notarial will are:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner.  If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1)  In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament *and shall sign his name at the end of the testament and on each other separate page.*
>
> (2)  In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar:  "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ___ day of _____, _____."

(Emphasis added). Importantly, further strengthening the guardrails against fraud, La. C.C. art. 1573 states, "[t]he formalities prescribed for the execution of a testament must be observed *or the testament is absolutely null.*" (Emphasis added). Notably, Article 1573 does not specify any exceptions to this standard.

According to La. R.S. § 1:3, "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. […] The word 'shall' is mandatory." Moreover, when a provision "is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give

effect to the purpose indicated by a fair interpretation of the language used." *Boudreaux v. Louisiana Dep't of Pub. Safety & Corr.*, 12-0239, p. 4 (La. 10/16/12), 101 So.3d 22, 26.

Here, we find the mandatory provisions of Article 1577, as written, are clear and unambiguous; therefore, "no further interpretation in search of legislative intent is required." *Police Jury of Calcasieu Parish v. Indian Harbor Ins. Co., et al.*, 24-0449, p. 4 (La. 10/25/24), --- So. 3d ----, ----, 2024 WL 4579035 at *6. Subsection (1) expressly requires a testator to *sign his name* at the end and on each separate page of a notarial will. There can be no dispute these provisions are mandatory; thus, any departure from these mandatory requirements constitutes a material deviation rendering a notarial will invalid.

In *Successions of Toney*, 16-1534 (La. 5/3/17), 226 So. 3d 397, this Court definitively stated a testator's mere initialing, in print, instead of his signed name on each page "falls short" of the formalities required by Article 1577(1). There, we found the will invalid because the testator did not "sign his name" pursuant to the codal formalities, constituting a material deviation nullifying the testament. Notably, in *Toney*, we acknowledged printed initials are easier to replicate than cursive initials.[3] Notwithstanding, initials—whether print or cursive—are far easier replicated than a signature.

In this matter, the testator's cursive initials do not comply with the statutory requirements. Compelling observance of these mandatory provisions has long been recognized in our jurisprudence, despite its harshness. In *Toney*, we invalidated a notarial will for noncompliance with the form requirements under Article 1577(1) when a testator similarly failed to sign his name on each page of the instrument. *Toney*, 16-1534, p. 9, 226 So. 3d at 404. There, we found the deviation was

---

[3] *Toney*, 16-1534, pp. 9-10, 226 So. 3d at 404-05.

significant and material, emphasizing, "Louisiana courts have held statutory and notarial wills invalid when they contain **material** deviations from form requirements, even in the absence of any indication of fraud." *Id.*, p. 15, 226 So. 3d at 407. (Emphasis supplied).

Notably, in *Toney*, the testament in question was flawed not only for its noncompliance with the signature requirement under Article 1577(1), but also, for its defective attestation clause, which did not indicate the testator declared, in the presence of the notary, that the testament was his last will and testament, or that all persons signed in the presence of each other, including the notary. *Id.*, p. 15, 226 So. 3d at 407. Later, in *Succession of Liner*, 19-2011 (La. 6/30/21), 320 So. 3d 1133, we validated a notarial will which contained an attestation clause which similarly deviated from Article 1577(2) as the attestation clause in *Toney*. In *Liner*, however, it was undisputed the testator's signature appeared on each page of the testament. *Id.,* p. 2, 320 So. 3d at 1136. There, we found the only statutory deviation, the attestation clause, substantially complied with Article 1579(2)[4] and deemed the will valid.[5] *Id.*, p. 1, 320 So. 3d at 1135.

In the wake of *Liner*, some of our lower courts have misapplied Article 1577(1)'s requirement that a testator "shall sign his name" on each page of the testament. In particular, some courts have interpreted *Liner* in an expansive manner, finding *any* "substantial compliance" with the requirements of Article 1577 sufficiently validates a notarial will. *See*, *e.g.*, *Succession of McKlinski*, 21-0369 (La. App. 4 Cir. 11/10/21), 331 So. 2d 414, *writ denied*, 21-1818 (La. 2/8/22), 332 So.

---

[4] The applicable requirements for the notarial will at issue in *Liner* were governed by Article 1579 instead of Article 1577 because the testator was unable to read.

[5] We note that, where the legislature intended to allow for a more liberal standard in signing a notarial testament, it did so. *See* Articles 1578(1) and 1579(3), which pertain to a notarial will executed by a testator who does not know how to sign his name or is unable to do so because of a physical infirmity; these Articles require the testator to "affix his mark […] where his signature would otherwise be required."

3d 642 (a testator's mere initials substantially complied with Article 1577's formal requirements under *Liner*); *see also*, *Succession of Pedescleaux*, 21-611 (La. App. 5 Cir. 5/11/22), 341 So. 3d 1224 (the testator substantially complied with Article 1577 when he initialed the bottom of each page and signed his name elsewhere on each page).

However, *Liner* is limited to deviations in an attestation clause and has no bearing on the signature requirements of Article 1577(1). We made this clear in *Succession of Morgan*, 22-01763 (La. 9/8/23), 370 So. 3d 399. There, we recognized: "*Liner* does not alter the requirements that a notarial testament must be in writing, dated, and signed by the decedent on every page and at the end, and the signing of an attestation clause by the notary and two witnesses." *Id.* p. 6 n. 6, 370 So. 3d at 403. Here, we re-emphasize our finding in *Morgan*, that the failure to comply with the statutory requirements of Article 1577(1) is a material deviation which invalidates a notarial will.

In this matter, we find the trial court adopted an overly broad application of "shall sign his name." As previously stated, in its reasons for judgment, the trial court stated:

> Initialing the testament on page one and two did not create any ambiguity, in fact it strengthen[ed] the ability to compare the varied marks of the testator to increase security of the testament.

In upholding the notarial will as valid, the trial court conflated the testator's initials with his signature, despite the mandatory requirement the testator "sign his *name*." (Emphasis added). We find the trial court erred as a matter of law and the court of appeal further erred in concluding the "notarial will substantially complied with La. C.C. art. 1577." Substantial compliance with Article 1577(1) is insufficient. Article 1577(1) is a *mandatory* requirement, stated simply: "shall sign his name," *not* his initials.

8

We agree with Judge Schlegel's well-reasoned dissent in this matter, which relied on *Succession of Carter*, 19-545 (La. App. 5 Cir. 5/28/20), 298 So. 3d 370, *writ denied*, 20-00808 (La. 10/14/20),[6] as well as *Liner* and *Morgan*, to correctly conclude the will is invalid. The dissent recognized, "[t]he pending case is not one that involves interpreting a will so as to determine the testator's intent," but rather, "[t]his case involves the testator's failure to comply with the formalities of a will as set forth in La. C.C. art. 1577(1)." The dissent, quoting *Morgan*,[7] correctly emphasized the use of the word "shall" in Article 1577(1) in relation to the signature requirements "reflects a policy decision by the legislature that the risk of mistake, imposition, undue influence, fraud, or deception is so significant that the absence of signatures constitutes a material deviation."

Notably, Article 1577 includes the language "substantially similar" only in Subsection (2), specifically in reference to the language of an attestation clause. That is, as long as an attestation clause is "substantially similar" to the clause supplied therein, it will be upheld. The Article neither expressly nor implicitly adopts a "substantial compliance" standard for Subsection (1).

In *Liner*, we overruled *Toney* insofar as it held an aggregate of slight deviations could constitute a material deviation. *Liner*, 19-02011, p. 6, 320 So. 3d at 1138. We clarify, here, the holding in *Toney*—notarial wills are invalid when they contain **material** deviations from the form requirements which nullify the testament, such as testator's failure to sign his name at the end and on each separate page of the testament—remains viable. As emphasized in *Morgan*, the validation of the notarial will in *Liner* for its substantial compliance with the attestation clause language supplied in the Article has no bearing on the other mandatory form requirements of

---

[6] In *Carter*, the court of appeal found a testament was absolutely null under Article 1577 for the testator's failure to sign the end of each page of a 3-page notarial will. He signed his name on the last page of the testament, but only initialed the first two pages.

[7] *Morgan*, 22-01763, p. 6, 370 So. 3d at 403.

a notarial will. A strict application of Article 1577 under *Toney* is warranted when the validity of a notarial will is questioned for lack of proper form, aside from its compliance with the attestation clause presented in Article 1577(2).

It is undisputed the testator in this matter did not sign his name on each page of the testament. As the trial court even acknowledged, the testator initialed the first two pages of the will, and signed his name on the final page. Initials and a name are not interchangeable for purposes of Article 1577(1). We are not persuaded by respondent's argument "the signing of Testator's initials and his name are very similar." Thus, we find the testator did not comply with the requirements of Article 1577(1). Accordingly, the testator's notarial will is invalid for his failure to sign his name on each other separate page pursuant to the mandatory requirements of Article 1577(1). Ruling otherwise and validating the will constitutes a clear departure from the plain language of Article 1577 and renders the statutory requirements of Article 1577(1) meaningless.

## CONCLUSION

In conclusion, when all the mandatory requirements of a notarial will are met, the will is self-proving. Here, the testator's children relied on the self-proving requirements of Article 1577(1) to invalidate their father's testament: "shall sign his name at the end of the testament and on each other separate page." There is no room in the mandatory requirements to interpret "sign his name" to include mere initials. The testator's will is clearly invalid on its face by even a cursory review. Equating initials to "sign his name" constitutes an error of law, an erroneous reading of La. C.C. art. 1577.

For the foregoing reasons, we reverse the lower courts and hold these material deviations render the notarial will invalid.

**REVERSED.**

10

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00091

## SUCCESSION OF JOHN WALLACE FRABBIELE

*On Supervisory Writ to the 40th Judicial District Court,*
*Parish of St. John the Baptist*

**WEIMER, C.J.**, additionally concurring

I concur in the majority's thoughtful and well-reasoned opinion which employs the well-settled rules of statutory interpretation to reach a result that honors both the letter and the spirit of the law, and which, in the process, clears up the confusion that has arisen in the jurisprudence as to the proper interpretation of La. C.C. art. 1577.

As noted by the majority, La. C.C. art. 1577 provides the "Requirements of form" for a notarial will:

> The notarial testament shall be prepared in writing and dated and **shall be executed in the following manner**. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and **shall sign his name** at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses **shall sign the following declaration, or one substantially similar**: "In our presence, the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____." [emphasis added].

Louisiana C.C. art. 1573 supplies the penalty for noncompliance with Art. 1577's mandatory requirements: "The formalities prescribed for the execution of a testament must be observed or the testament is absolutely null."

At issue in this case is the requirement of La. C.C. art. 1577(1) that the testator "sign his name at the end of the testament and on each other separate page." The

question presented is whether that formality is satisfied when the testator initials the first two pages of a three page testament and signs his name only on the last page of the testament, following the attestation clause. As the majority correctly concludes, that question is resolved by application of the rules of statutory interpretation. Applying those rules, it is clear that by using the word "name," the legislature intended the testator to sign his "name," not his initials, on every page of the testament, and that the use of initials in lieu of a name is a material deviation resulting in the absolute nullity of the testament.

Guided by the instruction in La. C.C. art. 11 that "[t]he words of a law must be given their generally prevailing meaning," the generally understood meaning of the word "name," according to its common and approved usage, is that found in the dictionary: "a word or phrase that constitutes the distinctive designation of a person or thing." MERRIAM-WEBSTER DICTIONARY, *Name*, https://www.merriam-webster.com/dictionary/name (last visited October 10, 2024). According to the same source, an initial is "the first letter of a name." *Initial*, https://www.merriam-webster.com/dictionary/initial (last visited October 10, 2024). Clearly, an initial is not the same thing as a name, as this court recognized in **Successions of Toney**, 16-1534, p. 10 (La. 5/3/17), 226 So.3d 397, 404 ("La. Civ. Code art. 15[7]7(1) unambiguously requires the testator to '**sign his name** at the end of the testament **and on each other separate page**,' and merely initialing undoubtedly falls short of this requirement.").[1]

---

[1] As evidenced by my dissent in **Toney**, I previously questioned whether the use of initials rather than the testator's name was a sufficient deviation from the form requirements of La. C.C. art. 1577 to justify invalidating a will in the absence of allegations of fraud. **Successions of Toney**, 16-1534 at 3-5, 226 So.3d at 410-411 (Weimer, J., dissenting). I have since re-examined my position, and have reached the conclusion that the rules of statutory interpretation in our civil law jurisdiction compel a different result. The beauty of living in a civilian jurisdiction is that ultimately, legislation is the superior source of law. **Bergeron v. Richardson**, 20-01409 (La. 6/30/21), 320 So.3d 1109, 1116 (Weimer, C.J., concurring). A more careful re-examination of the clear language of La. C.C. art. 1577 convinces me that my original view was in error, and, as Justice Robert H. Jackson sagely

2

The clear and unambiguous language of La. C.C. art. 1577(1) must be given effect according to its common meaning, and, as demonstrated, that common meaning does not encompass the use of initials. Morever, the requirement that the testator "sign his name" is mandatory. This is to be contrasted with the language of La. C.C. art. 1577(2), addressing the attestation clause, which only requires the use of "substantially similar" language. Unfortunately, as the majority notes, some lower courts have adopted an overly expansive reading of the language of La. C.C. art. 1577(1) in light of the broader language in La. C.C. art. 1577(2). The majority opinion corrects that error and provides much needed clarity and certainty to this area of the law.

---

counseled, "I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday." **Massachusetts v. United States**, 333 U.S. 611, 639-640 (1948) (Jackson, J., dissenting).

3

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00091

## SUCCESSION OF JOHN WALLACE FRABBIELE

On Supervisory Writ to the 40th Judicial District Court,
Parish of St. John the Baptist

**Hughes, J., dissents for the reasons assigned by Crain, J., and additionally assigns reasons.**

The will at issue actually contains not two, but three different writings by the testator. Absent proof to the contrary, the attestation clause should control.

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00091

## SUCCESSION OF JOHN WALLACE FRABBIELE

On Supervisory Writ to the 40th Judicial District Court,
Parish of St. John the Baptist

**CRAIN, J.**, dissenting.

The majority effectively interprets "sign his name" in Article 1577 to mean "*write* his name," rendering wills vulnerable to attacks based on signature style and penmanship. I respectfully submit this interpretation is not supported by the language of Article 1577, undermines the purpose of a signature, and needlessly complicates what the legislature intended to simplify: making a will.

The Civil Code does not define "sign," "signature," or otherwise specify legal standards for signing one's name to a document. Generally, our courts have recognized the uniqueness and variety of signatures:

> There is little formality required for signatures which come in all shapes and sizes and often are illegible. Furthermore, a person may use more than one form of signature.

*Succession of Armstrong*, 636 So. 2d 1109, 1111 (La. App. 4 Cir. 1994), *writ denied*, 94-1370 (La. 9/16/94), 642 So. 2d 196. In the context of authentic acts, Professors Litvinoff and Scalise, citing Planiol, describe a signature as "a handwritten inscription indicating the name of the person," but "it need not be a full statement of the person's official name." Litvinoff & Scalise, 5 La. Civ. Law Treatise, Law of Obligations §§ 12.19 and 12.28 (citing 7 Planiol et Ripert, Traité pratique de droit civil français 896 (2$^d$ ed. 1954)). The inscription will suffice if "the signature is made by the written signs habitually utilized by a person to identify himself." *Id.*

These standards are consistent with the purpose of Article 1577's signature requirement, namely to confirm the document is an accurate reflection of the testator's wishes, prevent substitution of one typewritten page for another after the will's execution, and confirm the will's completion.[1] To those ends, one's habitual use of a personalized inscription, not its length or content, is what objectively confirms the authenticity of the signature and the document bearing it. The connection between the signer and the signature, established by its repeated use and easily verified by other examples, makes a signature akin to a written fingerprint, something uniquely identified with the signer.

Signature disputes thus often turn on whether the disputed inscription sufficiently resembles signatures previously used by the signer. *See e.g. Succession of Dopp*, 21-0193 (La. App. 1 Cir. 10/18/21), 331 So. 3d 949, 953-54. Here, the majority omits that inquiry. Instead, it declares the inscriptions are initials and holds, as a matter of law, that initials can never satisfy Article 1577's signature requirement. This blanket rule, according to the majority, is mandated by the phrase "sign his name" in Article 1577. Respectfully, I see no material difference between "sign his name," "signed," or "signature." They are different ways of saying the same thing. The redactors of Article 1577 share this view.

Article 1577 interchangeably uses the phrase "sign his name" and "signed." While the first paragraph requires the testator "sign his name" on each page of the will, the second paragraph, which provides the suggested attestation clause, requires the witnesses and notary confirm the testator "signed" the will on each page. *See* La. Civ. Code art. 1577; *see also* La. Civ. Code art. 1580.1B. If "sign his name" was intended to mean something more than "signed," surely the legislature would not

---

[1]     *See Succession of Guezuraga*, 512 So. 2d at 369; *Succession of Nourse*, 234 La. 691, 696; 101 So. 2d 204, 206 (1958); *Succession of Hoyt*, 303 So. 2d 189 (La. App. 1 Cir. 1974); *Succession of King*, 595 So. 2d 805, 809 (La. App. 2d Cir. 1992), *writ denied*, 598 So.2d 357 (La.1992); Ronald J. Scalise, Jr., *Will Formalities in Louisiana: Yesterday, Today, and Tomorrow*, 80 La. L. Rev. 1331, 1350 (2020).

2

suggest an attestation clause that only confirms the testator "signed" the will. *See* La. Civ. Code art. 1577; *see also* La. Civ. Code art. 1580.1B. Similarly, the Civil Code article governing olographic wills uses only the words "sign" and "signed" to describe the signature requirement. *See* La. Civ. Code art. 1575. The majority implicitly finds these terms to be materially different from "sign his name" but offers no explanation for why the legislature would create different signature requirements for a notarial will and an olographic will. I respectfully submit the standards are the same.

The majority's interpretation of Article 1577 also undermines the purpose of the signature requirement if a testator customarily uses initials to sign his name. The testator's habitual use of the inscription, even if it appears to be initials, identifies him as the signer and discourages fraud. This personalized "written sign" is what reduces the risk of fraud, not a person's ability to legibly write his full name. *See* Litvinoff & Scalise, 5 La. Civ. Law Treatise at § 12.19. The trial court touched on this when it referred to the subject inscriptions as initials but still found they satisfied the signature requirement. As the trial court explained, the opponents failed to prove the testator did not customarily sign his name in that manner. I agree.

This case should be decided based on proof, by answering the two questions asked by Justice McCallum at oral arguments: who had the burden of proof, and did they carry it? Both can be readily answered. The opponents have the burden of proof. *See* La. Code Civ. Pro. art. 2932B. To carry that burden, they had to prove the inscriptions on the will's first two pages were *not* how the testator normally "sign[ed] his name." *See* La. Code Civ. Pro. art. 2932B; La. Civ. Code art. 1577(1).

The opponents rely entirely on the will itself. No witnesses testified, and no other documents were introduced. The difference between the inscriptions on the first two pages and the last page tells us very little, because the signature on the last page is above the testator's full legal name typed immediately below the signature

3

line. The longer signature could simply be an effort by the testator to conform his signature to his full name accompanying the signature line. *See Succession of Adler*, 334 So. 2d 799, 800 (La. App. 4 Cir. 1976) (testator misspelled her last name in signature to conform to misspelling of typewritten name below signature line; will upheld). The inscriptions on the first two pages are not above the testator's typed full name. This limited sample of writings alone does not prove the inscriptions on pages one and two were or were not habitually used by the testator to sign his name.

The will's most probative evidence is in the attestation clause. *See* La. Civ. Code art. 1577(2). "The principal function of the witnesses in the attestation requirement is to supply a source of proof that the testator signed what he formally indicated to be his testament." *Succession of Porche*, 288 So. 2d 27, 29 (La. 1973); *see also* La. Civ. Code art. 1577, Revision Comment (b); *Succession of Guezuraga*, 512 So. 2d 366, 369 (La. 1987); *Succession of Morgan*, 257 La. 380, 385; 242 So.2d 551, 552 (1970); Johnson, *Succession and Donations*, 43 La. L. Rev. 585, 596. The witnesses and notary public, who personally watched the testator execute his will, all attested he "signed it at the end and on each other separate page." The opponents introduced nothing to rebut the attestation clause. The majority expressly relies on the notarial will being "self-proving," and yet inexplicably gives no weight to the clause that gives the will that status—the attestation clause.

In support of its ruling, the majority further holds that substantial compliance with Article 1577(1) is insufficient. *See Succession of Frabbiele*, 24-0091 (La. __/__/2024), slip op. at p. 8. I express no opinion on the substantial compliance doctrine because its use is not necessary to decide this case. Still, the doctrine is a long standing rule of statutory construction first recognized by this court almost two centuries ago. *See Segur's Heirs v. Segur*, 12 La. 25 (1838) ("In relation to the dictation of the will, and the manner in which it was written, it appears to us there was substantially a compliance with the requisites of law."). Applying the doctrine,

4

this court consistently recognized that substantial compliance with mandatory form requirements was sufficient to uphold a will, particularly where there was no indication of fraud.[2] Before overruling such a long line of this court's precedent, I respectfully submit a more detailed explanation is warranted.[3]

We know the testator wrote the cursive inscriptions on the first two pages of his will. Due to a lack of evidence, we do not know if he normally signed his name in that manner. This evidentiary void cannot be filled by declaring the writings to be initials. Call them whatever you choose—initials, an abbreviation, a nickname, or illegible scribbling of a full name—the opponents still had to prove the inscriptions were *not* how the testator normally "sign[ed] his name." That is what Article 1577 requires. Absent such evidence, courts should not resort to speculation or be reduced to dissecting signatures, often illegible, to determine if the writing is the testator's full legal name, common name, nickname, initials, or some other variation of his name. Doubt can be resolved by the clause included in the document for this reason. As Justice Tate observed, "After all, the purpose of the attestation clause is primarily to evidence, at the time the will was executed, that the statutory formalities . . . had been satisfied." *Succession of Porche*, 288 So. 2d at 29. While

---

[2]     *See Succession of Guezuraga*, 512 So. 2d at 368 ("[C]ourts liberally construe and apply the statute, maintaining the validity of the will if at all possible, as long as it is in substantial compliance with the statute."); *Succession of Porche*, 288 So. 2d at (La. 1973) ("[S]ubstantial compliance with the Wills Act is sufficient."); *Stephens v. Adger*, 227 La. 387, 396; 79 So. 2d 491, 495 (1955) ("[S]ubstantial compliance with the formalities required in the execution of wills is sufficient to sustain its validity."); *Succession of Eubanks*, 9 La.Ann. 147, 148 (1854) ("[T]here was a substantial compliance with the requirements of Article 1574 of the Code.") For a detailed discussion of the substantial compliance doctrine, *see* Ronald J. Scalise, Jr., *Will Formalities in Louisiana: Yesterday, Today, and Tomorrow*, 80 La. L. Rev. 1331, 1346-52 (2020).

[3]     Confusion arose more recently in the wake of *Successions of Toney*, 16-1534 (La. 5/3/17), 226 So. 3d 397, *overruled in part by Succession of Liner*, 19-02011 (La. 6/30/21), 320 So. 3d 1133, where this court recognized that material deviations from the form requirements, even absent fraud, invalidate a will. *Successions of Toney*, 226 So. 3d at 407. The court rejected "any language in previous jurisprudence which suggested otherwise." *Id.* I submit *Successions of Toney* did not reject the substantial compliance doctrine, but rather emphasized that material deviations invalidate a will, regardless of whether fraud is alleged. That is consistent with the substantial compliance doctrine. If a will contains material deviations from the form requirements, it does not substantially comply with those requirements. On the other hand, if the deviations are not material, the will likely substantially complies with the form requirements.

5

the attestation clause is not the only proof in all cases, it is in this case. Based on that evidence, the opponents failed to carry their burden of proof. I would affirm the trial court's judgment upholding the will. Thus, I dissent.

SUPREME COURT OF LOUISIANA

No. 2024-CC-00091

SUCCESSION OF JOHN WALLACE FRABBIELE

*On Supervisory Writ to the 40th Judicial District Court,
Parish of St. John the Baptist*

**GRIFFIN, J., additionally concurs and assigns reasons.**

I am in full agreement with the majority opinion but write separately to emphasize the flaws in allowing initials to serve as an "habitual inscription" satisfying the notarial testament signature requirement.

As observed in the opinion, it conflates the act of signing one's name with that of affixing of one's mark despite the legislature clearly differentiating these requirements. *See* La. C.C. arts. 1578(1) and 1579(3). That no additional evidence was introduced is immaterial. It is obvious from the face of the testament that the "inscriptions" are acutely inconsistent. To suggest an individual could have multiple habitual signatures begs the question of why they would make use of such in a mere three-page document. The inescapable answer is that it reveals at least one of the two differing "inscriptions" is not habitually used as a signature. An attestation clause, regardless of its contents, cannot cure a material deviation in a notarial testament manifest in the absence of the requisite signature on each page. *See Succession of Morgan*, 22-1763, p. 6 (La. 9/8/23), 370 So.3d 399, 403.